## CHICAGO METALLIC MFG. CO. v. EDWARD KATZINGER CO.

No. 8320.

Circuit Court of Appeals, Seventh Circuit.

Dec. 10, 1943.

292

Samuel W. Banning, Ephraim Banning, and Max W. Zabel, all of Chicago, Ill., for appellant.

Charles J. Merriam, Russell Wiles, and Stanley Hoods, all of Chicago, Ill., for appellee.

Before MAJOR, KERNER, and MINTON, Circuit Judges.

MINTON, Circuit Judge.

The only question presented on this record is whether or not the plaintiff-appellant is estopped to deny the validity of Mechanical Patent No. 2,077,757 and Design Patent No. D-108573 for a baking pan, issued to one Jackson April 20, 1937 and February 22, 1938, respectively. These patents were assigned to the defendant-appellee, who is now the owner thereof. The District Court did not pass upon the validity of these patents as to all the world. It found: " * * * petitioner (appellant) is estopped to deny the validity of the two patents relied upon by the respondent herein."

Upon such findings, the District Court in its conclusions of law stated that each of said patents "is valid as between the parties to this suit."

The District Court, having found that the appellant was estopped to deny the validity of the patent, entered its decree that each of the said patents "is valid' as to each of its claims, as between the parties to this suit" and, having found infringement of both patents, ordered an accounting as to both. From this decree, the appellant brings this appeal.

If the estoppel upon which the court relied is not warranted, then the validity of the patents has not been tried and determined. Of course, we shall not reach the question of infringement until the validity of the estoppel is determined. Was the estoppel valid?

The appellant and the appellee, prior to the time the patents in question issued, were engaged in manufacturing baking pans. At first the pans were all made of smooth, unfigured material. Just prior to the issuing of the patents in suit, the appellant was manufacturing its Bakerex line and the appellee its Ovenrex line, in accordance with the claims afterwards allowed in the patents. These pans were manufactured from patterned metal strips. When the Mechanical Patent issued and while application was pending for the Design Patent, the appellee, as assignee and owner, wrote the appellant advising it of the appellee's patent rights and asserting that the appellant was infringing. On October 1, 1937, the appellant and the appellee entered into a non-exclusive licensing agreement authorizing the appellee to manufacture baking pans in accordance with the patent issued and the Design Patent for which application was pending. This license agreement contained certain price-fixing provisions, which are set forth in the margin.[1]

1 "11. Licensor reserves the right to establish a minimum sales price for the articles or products which Licensee is licensed to manufacture hereunder and to modify or change such minimum prices from time to time during the life of this agreement. The Licensor, as well as Licensee and any other person, persons or corporation licensed by Licensor, shall not, with the consent of Licensor, sell or offer for sale, or otherwise dispose of any of the licensed devices or products below said minimum sales price, or on more favorable terms of sale than those set forth in any such scale of prices so established by Licensor. Contemporaneously with the execution and delivery of this license agreement, Licensee has received from Licensor a schedule of minimum prices, effective as of the date hereof, below which none of the products or devices made under this license shall be sold. Licensor reserves the right, upon thirty (30) days' notice in writing given by Licensor to Licensee, to change said minimum prices from time to time during the life hereof. On such article or devices made and sold by Licensee as to which Licensor shall have failed or neglected to establish a minimum sales price, the royalty shall likewise be computed on the net sales price received by Licensee from its customers. Licensee or its duly authorized representatives shall have access from time to time to the books of account of Licensor during ordinary business hours for the purpose of determining whether or not Licensor has complied with the provisions of this paragraph."

The duration of the license agreement and rights on termination were controlled by Paragraph 14, which is set forth in the margin.[2]

On February 20, 1941, the appellant elected to terminate this license agreement. The appellee contends the effect of the appellant's action was to terminate the contract as to the price-fixing provisions, and, since the appellant was manufacturing the line of bakng pans known as Bake-King which the appellee claimed infringed its patents, to bring into effect the estoppel provision of Paragraph 14.

After the trial was concluded but before the court entered its decree, the Supreme Court decided Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165. The District Court in its memorandum opinion said it did not think the Sola Electric case applied, stating: "The decision of the Supreme Court in the case of Sola Electric Company v. Jefferson Electric Company so strongly urged by the petitioner as being applicable to this case, I feel is not in point. In this case no price fixing by the respondent has been proved by the petitioner. The evidence shows that the clause to which petitioner refers in its argument was inserted in the contract at the request of the petitioner. At no time did the respondent attempt to carry it out and the respondent was at all times willing to have same removed from the contract. For these and other reasons apparent upon a reading of the Supreme Court's opinion, I feel that the decision in the Sola Electric Company case is not controlling here."

■■ The license agreement, Paragraph 11, supra, note 1, did provide for a clear price-fixing arrangement. The appellee will not be heard to say that it really was not in favor of the provisions as to price-fixing contained in a written agreement it had signed, or that it did not practice price-fixing. The important thing is that the appellee had provided by contract for the right to fix prices. The agreement was plain and unambiguous. It is not claimed otherwise. There was no justification for the construction that the District Court put upon it to avoid the scope of the Supreme Court's opinion in the Sola case. By the plain provisions of the license agreement, there were arrangements for price-fixing. This was not a separable provision of the agreement, and it was, like the rest of the agreement, based upon a common consideration and was a part of the contract after notice of determination, though functus officio as to the future. The agreement was not purged of the deleterious effect of the price-fixing arrangement by notice of termination. The vice lay in its incorporation in the contract at all. A contract containing price-fixing provisions which do not have the protection of a lawfully granted patent monopoly is invalid, being a violation of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, and no recovery may be had upon it. Continental Wall Paper Co. v. Louis Voight & Sons Co., 212 U.S. 227, 29 S.Ct. 280, 53 L.Ed. 486. Therefore, since the validity of the entire contract depends upon the validity of the patent, it is clear that no estoppel arising out of the contract can prevent an examination of the patent's validity.

We decide on the authority of the Sola case, supra, that the appellant was not estopped to deny the validity of the patents, because the license agreement which provided for the estoppel carried a provision for price-fixing. For that reason, no estoppel could arise.

The District Court has not passed upon the validity of the patents except by way of estoppel. We have held that the estoppel is unwarranted. The question of the patents' validity is wide open as to the appellant and all the world. As the District Court has not passed upon the validity of these patents, we would not be warranted in passing upon it.

The judgment is reversed and the cause remanded.

2 "14. This contract shall remain in force for and during the life of the last expiring patent coming within the terms of this license unless sooner terminated by either party upon sixty days' written notice to the other party, provided, however, that Licensee may avail itself of this right to terminate only upon ceasing to manufacture, sell or distribute articles embodying or made in accordance with any of the licensed patents or applications, except as provided in paragraph 9 hereof. Should Licensee elect to terminate, as aforesaid, except as provided in paragraph 9 hereof, without ceasing to manufacture, sell or distribute said article, it shall be estopped from denying the validity of said patent or patents, or any of them, and be deemed an infringer thereof."