## CHICAGO METALLIC MFG. CO. v. EDWARD KATZINGER CO.

### No. 8753.

Circuit Court of Appeals, Seventh Circuit.
Jan. 22, 1946.

Writ of Certiorari Granted April 29, 1946.

See 66 S.Ct. 981.

Charles J. Merriam and George A. Chritton, both of Chicago, Ill. (Chritton, Wiles, Schroeder, Merriam & Hofgren, of Chicago, of counsel), for appellant.

Ephraim Banning and Max W. Zabel, both of Chicago, Ill., for appellee.

Before SPARKS and KERNER, Circuit Judges, and BALTZELL, District Judge.

BALTZELL, District Judge.

This appeal challenges the correctness of the decree of the district court in which the Jackson patent in suit, No. 2,077,757, was found to be invalid. The application was filed in the Patent Office on August 17, 1936, and the patent issued on April 20, 1937. The case has twice before been on appeal to this court. See 123 F.2d 518; 139 F.2d 291.

An action was begun in the district court by plaintiff-appellee, hereinafter referred to as appellee, in which it sought a declaratory judgment as to the validity and infringement of the aforementioned patent, together with other patents. Only this patent, however, is involved in this appeal. The defendant-appellant, hereinafter referred to as the appellant, filed in the district court a counter claim in which it contended that the patent in suit was valid and infringed. It sought an injunction and an accounting. The patent was issued to Joseph G. Jackson, afterwards assigned to appellant and now owned by it.

Both appellee and appellant have long been engaged in the manufacture and sale of tin ware, especially baking pans which are used by housewives, the surface of such pans being sometimes smooth. In January of 1936 appellant began the manufacture and sale of a line of baking pans designated as "Ovenex." Shortly thereafter, appellee introduced a new line of baking pans similar to those made by appellant and designated them as "Bakerex." Appellee was notified by appellant that it considered such merchandise as infringing its patent. On October 1, 1937, the parties entered into a license agreement whereby appellee was given the right to manufacture and sell such merchandise under its trade name of "Bakerex" and to pay a certain royalty to appellant under the license. Payment continued until some time in May or June of 1938 when appellee discontinued the manufacture and sale of "Bakerex" and introduced another line known as "Bake-King," the construction of which it contended differed from both "Ovenex" and "Bakerex" and was not included in the license agreement. It refused to make further payments under the license. This action was after-

wards filed in the district court on February 21, 1941.

A decree was entered by the district court on April 24, 1943 in which it was held that the patent in suit, known as the Jackson patent, was valid as between appellee and appellant and infringed, and an accounting was ordered. The holding of validity was as between the parties only, and was based solely upon the ground of estoppel because of the license agreement heretofore referred to. An appeal was taken from this decree, and this court held on authority of the case of Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165, that estoppel did not apply, owing to the fact that the license agreement contained a provision for price fixing, and the cause was remanded to the district court. Chicago Metallic Manufacturing Co. v. Edw. Katzinger Co., 7 Cir., 139 F.2d 291. Thereafter, on September 27, 1944, the district court entered a final decree wherein it held that the Jackson patent in suit was invalid and dismissed the counterclaim, which charged infringement, for want of equity. The question to be determined, therefore, is whether or not the Jackson patent, No. 2,077,757, is valid.

Baking pans are old in the art, and it is not otherwise contended by the parties. But, appellant asserts that pans built in accordance with the patent in suit present a "pleasing and appealing appearance, will not be easily scarred or marked and will have increased strength and resistance to denting and warping * * *" Granting that this and other advantages set forth in the specifications of the patent are true, does the claimed structure rise to the dignity of invention? We think not. It may have required mechanical skill to design the article, but it is well known that "patentable novelty or invention calls for something more that the skill of the mechanic". Chicago Steel Foundry Co. v. Burnside Steel Foundry Co., 7 Cir., 132 F.2d 812.

It is stated by Jackson in his specifications that: "This invention relates to baking pans and the material from which they are made, whereby the pan will present a pleasing and appealing appearance, will not be easily scarred or marked, and will have increased strength and resistance to denting and warping. It also contemplates a pan wherein the grease, if any, used in baking will be evenly distributed over the inner surfaces of the pan and the pan surfaces in direct contact with the dough therein will be increased to improve the bake." The specifications also provide that: "Heretofore, in the manufacture of baking pans the material or metal used has generally had a plain, smooth, uninterrupted and generally a polished surface with the result that every defect in the material, all dents placed therein from one cause or another and all finger prints, smudges and the like appeared thereon and often were emphasized. Therefore, the smooth, plain, polished surface of the pan walls in addition to being easily marred and dented. did not present a particularly attractive appearance on display, especially after the article has been frequently handled." Further, the inventor states, in substance, that the smooth, flat material warps easily and provides no means for an even distribution of the grease. The patent in suit does not change the shape of the pan or provide a new use for the same. It simply provides for a pan with alternate depressions and elevations on the surface which will remove all stress, strains and buckles, will conceal any defects and finger-prints, and will prevent warpage. It may also provide for an increased heating surface and a more uniform distribution of grease, because of the depressions and elevations. The depressions and elevations may be rolled, pressed or otherwise made either before, during, or after the formation of the pan.

The claims of the patent may be summarized as follows: A sheet metal baking pan having a bottom stamped into alternate elevations and depressions aligned in at least two directions; a sheet metal baking pan having a plurality of relatively small, shallow depressions formed therein arranged in rows in at least two directions, said rows being separated one from the other by continuous, relatively low and narrow elevations; a sheet metal baking pan having a series of shallow, relatively small depressions formed in the bottom thereof and aligned in rows in at least two directions, said rows being separated one from the other by relatively low and narrow elevations, part of which are continuous and part interrupted by other elevations; a sheet metal baking pan having the material thereof stamped into alternate elevations and depressions aligned in at least two directions; a sheet metal baking pan having a series of alternately arranged relatively shallow depressions and elevations aligned in at least two directions; and a metal baking pan having a plurality of separated relatively

shallow, small depressions in the bottoms and walls thereof. Under these claims it is apparent that it was intended that elevations and depressions should be separated by continuous, relatively low and narrow elevations and aligned in two directions. At least one of the purposes of the separation and alignment of the depressions and elevations was presumably to improve the appearance and to prevent the grease from passing from one depression to another in the oven or other support of the pan when in use if such oven or other support was uneven, and to more evenly distribute the grease. It will be observed that, considering the scope of the claims, this arrangement may be in the walls of the pan, as well as in the bottom. It is believed that the above description will suffice to advise one of the character and scope of the patent in suit.

Appellee has cited several patents and publications showing the state of the art prior to the asserted invention of the patent in suit. Long prior thereto baking pans were constructed of sheet metal, and both the bottoms and the sides were corrugated or embossed by elevations and depressions. True, such elevations and depressions were not always entirely separated, and some were not aligned geometrically in two directions, as provided in the patent, but they were so constructed as to clearly suggest the subject-matter of the Jackson patent. Patent No. 319,306 is entitled "Process of Making Sheet Metal Ware," the patent having issued to H. L. Palmer on June 2, 1885. This patent did not relate to pans used for baking, but did relate to the surface ornamentation of trays, waiters, plaques, card receivers, clock frames, etc. The finished product however, contained elevations and depressions aligned in two directions.

The patent to Ball, No. 495,872, granted in 1893, discloses and claims a "bake pan provided with a series of independent pocket-forming elevations in its bottom."

Appellant admits in its brief, at page 12, that: "The American Nickeloid exhibit consists of sheet metal available on the market prior to Katzinger and embossed in a manner which might infringe the claims if the American Nickeloid sheets were made up into baking pans." It contends, however, that: "There was no suggestion in the art that the sheet metal be used for such purpose and the discovery that a baking pan could be made of sheet metal of this type is highly inventive." As heretofore observed, baking pans were old in the art, and there was no formula as to either the type or the kind of material from which they must be made. There was nothing to prevent a person of ordinary mechanical skill from using such sheets in the making of baking pans. Certainly, it would not require inventive genius to thus shape these sheets. The fact that the metal may have been designed for ornamental purposes would not deprive a person from using it for other purposes, such as baking pans.

■ Since we have arrived at the conclusion that the patent is invalid for lack of invention, no good purpose would be served in further discussion of the prior art.

The decree of the district court is affirmed.