## FREDERICK HART & CO., Inc., v. RECORDGRAPH CORPORATION.
### Civil Action No. 999.

District Court, D. Delaware.
Sept. 8, 1947.

Thomas Cooch (Marvel & Morford) of Wilmington, Del., Willis H. Taylor, Jr., John T. Farley, and Harold A. Traver (Pennie, Edmonds, Morton & Barrows) all of New York City, for plaintiff.

Robert H. Richards, Jr. (Richards, Layton & Finger), of Wilmington, Del., George T. Bean, Robert M. Anstett, and Ralph L. Chappell (Kenyon & Kenyon, all of New York City for defendant.

RODNEY, District Judge.

The present matter is based upon a suit for a declaratory judgment that fifteen numbered patents owned by the defendant are invalid and are not infringed by the plaintiff. The immediate problem is the disposition of certain motions of the defendant. The defendant has moved (1) to dismiss the complaint under Federal Rules of Civil Procedure, rule 12(b) (1), 28 U.S.C.A. following section 723c, on the ground that no controversy existed at the time of filing the complaint; (2) for a summary judgment; and (3) for a stay of the present proceedings subject to the disposition of proceedings pending in New York.

The material facts necessary to be considered are as follows: The defendant, owning fifteen patents, on May 24, 1943, assigned the exclusive rights therein to the plaintiff; the plaintiff on September 17, 1946, and pursuant to the terms of the assignment, gave notice that the agreement would be terminated 90 days after such date, to wit, on or about December 17, 1946. On January 18, 1947, the plaintiff filed its present complaint in this court. On January 20, 1947, the defendant filed its complaint in the United States Court for the Southern District of New York alleging infringement by the present plaintiff of four numbered patents, being four of those involved in this Delaware action.

Subsequently the defendant in this court directed interrogatories to the plaintiff seeking information as to the foundation of the alleged "controversy" as the basis of jurisdiction of this court. The propriety of those interrogatories was sustained by an opinion of this court on April 18, 1947, Hart v. Recordgraph Corp., D.C. 7 F.R.D. 43.

On May 5, 1947, the plaintiff answered the interrogatories stating, on information and belief, that the Treasurer of the defendant company asserted and charged infringement by the plaintiff, such assertions and charges being allegedly made to one Mr. Weber at the Navy Department in Washington. It was stated that the communication was oral and in the following terms:

"Fredrick Hart & Co., Inc., having given notice of its cancellation of its license with Recordgraph Corporation and having indicated it will continue to manufacture and sell the apparatus heretofore made under the Recordgraph license, Hart Company will be operating on its own and Recordgraph Corporation intends to contest Hart Company's so doing by suit under Recordgraph patents."

The plaintiff also, in answer to the interrogatories, relied upon a statement in the complaint filed January 20, 1947, by the present defendant in the infringement suit in the New York court that "defendant has had notice of its infringement of the claims of the said Letters Patent, but despite this fact has continued and threatens to continue its infringement."

The defendant, as heretofore stated, has filed three alternative motions, (1) to dismiss the complaint on the ground that no controversy existed, (2) for summary judgment, and (3) for a stay of the present proceedings pending the disposition of the proceedings in New York.

In support of these motions the defendant has filed the affidavit of William S. Murray, Jr., purporting to state the exact facts of the interview with Mr. Weber at the Navy Department in which conversation the supposed controversy is alleged to have had its origin. The affidavit explicitly denies the language attributed to him and expressly denies any threat of suit for patent infringement of any kind. The defendant contends that the sole purpose of the interview was to acquaint the customers that the license agreement would be terminated and that the defendant would re-engage in business and sought to be notified of the requirements of the Navy Department so as to bid on such needs.

Since the alleged purpose of the visit of Murray to the Navy Department was to read a letter from Woolf, President of the defendant company, and to ascertain the needs of the Navy Department, and as much reliance is had upon the contents of the letter as establishing the controversy, so the letter which Murray read to Weber be-

comes material. This letter was as follows:

"70 Hudson Street
"Hoboken, New Jersey
"November 21, 1946

"Mr. William S. Murray, Jr.
"Treasurer
"Recordgraph Corporation
"70 Hudson Street
"Hoboken, New Jersey
"Dear Mr. Murray:

"As you know, the contract with our exclusive licensee, Frederick Hart & Company, Inc., expires on December 17, 1946. Thereafter Recordgraph patents will not be available to the Frederick Hart Company for any new manufacturing, the right remaining to them to dispose of their inventory only.

"Whereas all Recordgraph contacts with the Navy have heretofore been made through our licensee, it seems desirable that a direct representative of Recordgraph inform the Navy of the changed situation with the view in mind of causing them the least possible inconvenience in the transition state. Will you please contact interested Navy personnel to inform them of the above facts and to ascertain their future needs for recording machines and films made under Recordgraph patents, and the rate of delivery required on each in order that we may work out arrangements to fulfill their requirements.

"Very truly yours,
"William L. Woolf
"President."

The present defendant, as stated, contends the sole purpose of the visit of Murray to the Navy Department was to present the letter as to the termination of the license agreement by Hart and to ascertain the future needs of the Navy Department for orders to be filled by the use of Recordgraph patents.

The plaintiff has filed several affidavits, two of which state conversations with Weber and purport to give the substance of Weber's conversation with the affiants, the tenor of which would not be in conformity with Murray's version of the conversation with Weber.

From a consideration of the various affidavits it would seem that the controversy, if it exists by virtue of the interview with Weber, must be established by the Murray affidavit. Murray and Weber were, so far as it appears, the only persons present at the interview when the controversy is alleged to have had its origin. Murray states what he says took place. No affidavit was made by Weber. The affidavits reciting conversations with Weber and purporting to give Weber's statements to the affiants leave much to be desired from an evidential viewpoint, and the additional Purdy affidavit adds no confirmation to the existence of a controversy growing out of the conversation with Weber. If the existence of a controversy, then, is to be determined it must be determined by the language of the Murray affidavit as explained or supplemented by the "background" furnished by the remaining affidavits.

■ A careful examination of all the pertinent facts does not, in my opinion, disclose any threat or charge of infringement. As said in Treemond Co. v. Schering Corporation, 3 Cir., 122 F.2d 702, 705, "There can be no doubt that an 'actual controversy' does not exist until the patentee makes some claim that his patent is being infringed."

■ In this case the plaintiff concedes that the defendant has made no direct charge of infringement by the plaintiff and it is clear that any suggested threat was made to Mr. Weber of the Navy Department, a user of the article. However, it is also clear that a claim of infringement need not be asserted with any particular formality nor given directly to the plaintiff. The burden here, then, is to determine whether a threat can be spelled out from the present circumstances.

■ A patentee who has granted an exclusive license for the use of his patents must, on the termination of the exclusive license agreement, have some rights to the renewed use of his own patents. He may again commence manufacture of the patented article which he could not do while the exclusive license agreement was in effect.

■ Without giving some notice of the termination of the exclusive license the patentee could not deal with any user of the patented article as to the furnishing of any future articles by the patentee. The mere giving of this notice unaccompanied by circumstances clearly evidencing a threat of an infringement suit cannot, of itself, constitute such threat.

If, then, the patentee has a right to resume the manufacture of articles under his patent after the expiration of an exclusive license therefor, and if to show his right to, himself, produce articles under his patent, he may or should show the termination of an exclusive license agreement theretofore existent to others, then it is difficult to see how the present facts exceed these steps.

I find that on November 25, 1946, the defendant knew the exclusive license would be terminated in December. It had the right to seek business thereafter on its own account. It had the right to state that this new business could be sought only because the exclusive license agreement under which another had operated exclusively under the patents would be cancelled. I do not find in the affidavit of Murray, even with the surrounding facts, any threat of any infringement suit as to subsequent action by the present plaintiff.

Reliance is had on the case in this court of Federal Telephone & Radio Corporation v. Associated Telephone and Telegraph Co., D.C. 71 F.Supp. 877. Nothing, I think, in that case is dispositive or particularly helpful in the present matter.

■ No controversy between the parties as emanating from the infringement suit brought by the defendant in New York can establish the controversy necessary in this court. In that proceeding the defendant in this case brought suit against the present plaintiff alleging infringement of four specified patents.

■ I am of the opinion that the contents of the New York complaint, subsequently filed, cannot establish the existence of the controversy required in the Delaware complaint, antecedently filed. A complaint must stand or fall upon its own merits and its very foundational element of a controversy cannot be solely furnished by subsequent happenings.

Mindful of the desirability of an avenue to test, by declaratory judgment proceedings, the validity of patents when a controversy as to such patents has arisen, yet the complaint, with other pertinent proceedings, must show some such controversy to have arisen.

Because the present complaint, as amplified by the interrogatories, answers thereto and affidavits filed in the cause, does not indicate any justiciable controversy, so I think the complaint must be dismissed.