**REYNOLDS METALS CO. v. METALS DIS-
INTEGRATING CO., Inc.**

Civil Action No. 9606.

United States District Court,
D. New Jersey.

Oct. 1, 1948.

350

Pennie, Edmonds, Morton & Barrows, of New York City (Raymond F. Adams and Curt Von Boetticher, Jr., both of New York City, of counsel), for plaintiff.

Carpenter, Gilmour & Dwyer, by James D. Carpenter, Jr., all of Jersey City, N. J., for defendant.

FAKE, District Judge.

The issues here, as they appear in the moving papers, may be separated under two distinct headings. One, a motion directed to the complaint as a sham or false pleading. The other, a motion directed to the sufficiency of the complaint as a matter of law on its face and without the aid of depositions.

The questions directed to the complaint as a sham pleading will be considered first.

The complaint is based on a written agreement entered into between the parties to this suit wherein certain royalties are provided for the use of some six patents. The agreement recites that the defendant is the owner of these patents, that they relate to the manufacture of aluminum bronze powder, and the plaintiff is given a license to use them in the manufacture of aluminum flake, aluminum bronze powder, and aluminum paste. The plaintiff alleges that it is now informed and believes that articles 3 and 20, of said agreement, are void for the reason that these articles provide for a minimum price at which the dry unpatented aluminum powders may be sold, thus conflicting with the Sherman anti-trust law, 15 U.S.C.A. § 1 et seq.

Notwithstanding the allegations of invalidity admitted by the complaint, plaintiff seeks a reformation of the contract by striking therefrom the admittedly invalid provisions; seeks the recovery of vast sums of money paid thereunder, and as well the continuance in full force and effect of the provisions not so tainted.

The ground upon which relief is sought is stated in the complaint as follows:

"Plaintiff accepted said license agreement, Exhibit A, in good faith and in reliance upon defendant's representation and plaintiff's belief that said license agreement at the time of its execution was a lawful and proper license agreement * * *."

It should be emphasized at this point that plaintiff does not contend that it was misled by a belief that any one or more of the patents gave a monopoly on a dry powder product. It is conceded that the vice of the agreement resides in the price fixing provisions relating to the dry powder.

On the motion to deal with the complaint on the ground that it is a sham pleading, defendant urges that the allegation to the effect that defendant represented to plaintiff that the said license agreement at the time of its execution was a lawful and proper license agreement is false in fact and therefore sham. In short it denies that any such representation was made. Can the court deal with the issue thus raised short of a formal trial on issue joined?

A few weeks ago an opinion came down from our Circuit in the case of Frederick Hart & Co., Inc. v. Recordgraph Corporation, 169 F.2d 580, 581. This opinion has given me great pause and it is necessary to quote the rules arrived at in that case. The Court there says:

"It is well-settled that on motions to dismiss and for summary judgment, affidavits filed in their support may be considered for the purpose of *ascertaining whether an issue of fact is presented, but they cannot be used as a basis for deciding the fact issue.* An affidavit cannot be treated, for purposes of the motion to dismiss, as proof contradictory to well-pleaded facts in the complaint.

"* * * no matter how likely it may seem that the pleader will be unable to prove his case, he is entitled, upon averring a claim, to an opportunity to try to prove it * * *."

From the foregoing it would seem that under the Federal practice neither a complaint nor an answer can ever be attacked as sham or false, since to do so is to raise a question of fact which the court is powerless to decide, and even in the face of an admission of falsity by plaintiff itself, the Court is left impotent and must proceed to a plenary trial or the taking of evidence on the point in open court. Moreover, the ruling in the Hart case tends to destroy absolutely the speaking motion addressed to a complaint where a fact question is involved. The speaking motion is a new device. The evil which the pleaders of old found in the speaking demurrer has now, by our modern motion practice, become a virtue in clearing calendars from ill founded pleadings, and matter dehors the record can be considered. The Hart case, however, would seem to send us back to that ancient time, when a declaration could not be attacked as a sham pleading. Is the allegation that defendant "wrongfully represented to plaintiff that the agreement was a lawful one" well and sufficiently pleaded? The answer to this question is yes, insofar as the fact as to the making of the allegation is concerned.

In this connection it is well, hastily at least, to examine the rules in the light of the history of the law on the subject. There is no question but that at common law a declaration could not be attacked on the ground that it was sham, but pleas could be so attacked, and it was some years after my admission to the New Jersey Bar before a declaration or complaint could be so attacked in this State. On coming to this bench, we in the Federal court were following the New Jersey practice, and so it was that under the State practice this court first functioned on motions directed to sham complaints. The New Jersey rule then provided that a complaint may be struck "if it appears probable that the complaint * * * is * * * sham." N.J. S.A. 2:27–125.

Looking now to our modern and enlightened Rules of Federal Procedure, Rule 56(b), 28 U.S.C.A., provides that:

"A party against whom a claim, (formerly known as a cause of action) * * * is asserted * * * may, *at any time,* (these words "at any time" are inserted to nullify what happened at common law when a careless lawyer failed to demur and pleaded over) move with or without supporting affidavits for a summary judgment in his favor * * *."

Clearly this would seem to place the complaint in which a claim is asserted in the same position or category as the old plea or answer, and unless the supporting affidavits can be read bearing on facts, they are utterly futile, and we are left with nothing more than the old general demurrer.

Looking now to subdivision (c) of the Rule we find that;

"* * * the judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that * * * there is no genuine issue as to any material fact * * *."

There is no doubt in my mind but that the word "pleadings" used as above includes the complaint. Hence if it appears as here that the complaint is sham, it should fall.

The President of the plaintiff corporation, R. S. Reynolds, who executed and delivered the agreement, deposed as follows:

"Q. You don't know of any representation that Metals Disintegrating made about this contract or its legality or illegality, do you? A. I will have to say, no."

Thus the plaintiff speaks through its chief executive officer. A deposition of William J. D. Woods, general counsel for the plaintiff, who advised and collaborated in drawing the contract, when analyzed, is to the same effect. Other representatives of the plaintiff were examined and in no instance does it appear that defendant's agents made any assertions on validity as it is raised in this case.

The record before me discloses that both parties, through their respective, duly authorized representatives, collaborated in inserting, in the agreement, the language fixing prices on dry powder.

At this point it is well to consider what is intended by subdivision (c) of rule 56, when it deals with the subject of a "genuine issue." Funk and Wagnalls dictionary, 1944, says the word "genuine" means "not false, spurious or adulterated." Bouvier's Law Dictionary, 1914, Rowles Third Rev., page 1351, defines the word as "not false, fictitious, simulated, spurious (or) counterfeit." It would seem, therefore, that when the rule provides that the court has the power to examine an allegation, as to whether that allegation is genuine, it is authorized to ascertain the truth of it. And, on finding that it is false, and so admitted to be false by the plaintiff's chief executive who executed the agreement, the claim should be stricken. It should be emphasized that the complaint, in the instant case, is not verified and the ruling of the court, in the Hart case, gives an unverified complaint the same force and effect as a sworn statement. Moreover, the use of the word genuine leads directly to the subject of sham pleadings since a false plea, at common law, was a sham plea. In dealing with the subject of sham pleading Chitty says it "is the pleading of matter known by the party to be false for the purpose of delay or other unworthy object," (Chitty on Pleading, Vol. 1, 7th American Ed., 1837, Page 574). He then goes on to say, even in those days, that it "has always been considered a very culpable abuse of justice, and has often been censured and set aside with costs." After noting that generally it is in the province of the jury to decide upon mere matter of fact, he continues, "but there are many instances in which a plea may be so palpably and manifestly untrue, that the court will assume that it is so, or will, on affidavit that it is false, permit the plaintiff to sign judgment as for want of a plea." Of course Chitty is here dealing only with pleas, and not declarations, but as has been said it is my view that under our new rules of civil procedure, the authors have placed our modern complaints under the same urgency for truth as pleas in former years. If such was not the intent the authors would have said so. It was a time honored rule, in the days of common law pleading, that all pleas must be truthful. Chitty gives numerous examples of the striking of false pleas, and while it cannot be said that the subject was fully clarified in his day, Chitty deals with the subject extensively, under four headings. The third is as follows: "False pleas, which, although they might by possibility be true, yet are in all probability fictitious." Chitty on Pleading, supra, Page 575. Under the fourth heading he gives an example where an affidavit directed to the truth of a plea was considered. The declaration was on a bill of exchange with money counts. Defendant pleaded that the parties had accounted: that a certain sum was found to be due: that in satisfaction of part the defendant indorsed a bill to plaintiff which was outstanding in the hands of a third person and that in satisfaction of the remainder, the defendant assigned to the plaintiff an Irish Judgment, which was in force.

This it will be seen raised many issues of fact. "The court on affidavit of the falsity of the plea, allowed plaintiff to sign judgment, and directed that defendant's attorney should pay the costs of the application." If it be urged that all this deals only with a plea and cannot be used against a declaration; the answer is that our rules of civil procedure intended to strike at such evils whether they be found in the complaint or in the answer and the attack may be made "at any time" even after answer filed, and on the coming in of a speaking motion the entire record before the court is open for inspection. (See "New Federal Procedure and the Courts, Holtzoff," 1940, Page 143; see also "Rules of Civil Procedure, for the District Courts of the United States, with notes as prepared under the direction of the Advisory Committee and Proceedings of The Institute on Federal Rules.") Mr. Sunderland, p. 295.

In the instant case the complaint is not verified by oath. Rule 11 comes into play on this point, since, if the complaint is not sworn to, can it be said that it meets and dissipates a deposition under oath? The rule provides that pleadings need not

be verified. "Signature of an attorney constitutes a certificate by him that he has read the pleading; that to the best of his knowledge * * * and belief there is good ground to support it." This is a long way from saying that such an unsworn complaint attains the dignity, force and effect of an affidavit, and that therefore, an affidavit attacking its truth is a waste of time. This rule is directed to "every pleading." I therefore assume that it includes the complaint. The rule proceeds further: "If a pleading is not signed or is signed with intent to defeat the purpose of this rule, it may be stricken as sham and false * * *." The purpose of this rule is "* * * to hold the attorney of record who signs * * * to strict accountability * * *" United States, to Use of and for Benefit of Foster Wheeler Corp. v. American Surety Co., D.C., 25 F.Supp. 225, 226. In this rule we find the word "sham" as applied to a complaint. That word must be taken in its full legal connotation, and it seems to me to indicate full authority to strike an unsworn complaint as false, when it is met by an affidavit denying its truth.

Looking now to Rule 12(b) we find that "Every defense, in law or fact, to a claim for relief * * * shall be asserted in the responsive pleading * * * except that the following defenses may at the option of the pleader be made by motion * * * (6) failure to state a claim upon which relief can be granted * * * if, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided by Rule 56 * * *."

From this it would appear that a speaking motion may well be directed to a complaint by way of defense on questions of fact raised by new matter dehors the record. Otherwise, how can the motion be treated as for summary judgment on the facts?

In the years of experience here in New Jersey in dealing with sham complaints, the practice became well settled, and one busy motion day, when I was working under pressure to stream-line my work to conform with modern mass production, I failed to realize that I had conflicting affidavits before me and I struck down a complaint where an allegation of fact was clearly controverted. My discomposure may easily be imagined when the opinion came down in Gordetsky v. Shell, Eastern Petroleum Products, 3 Cir., 101 F.2d 760, 761. That was back in 1938 or 39, prior to our new rules, but it seems to me the reasoning then might now well be followed. I do not believe that our new rules intended to waive the necessity for verification of a complaint, after a sworn attack on its veracity. When such sworn attack is injected, the burden of proof should shift to the plaintiff requiring him to verify. It appeared in the Gordetsky case that because neither complaints nor answers were required to be verified in the first instance, the purpose of the motion was to "require the party against whom the motion is made to verify his pleading by a supporting affidavit." In the instant case the plaintiff filed depositions in opposition to those of the defendant, but in no instance do the answering depositions deny that the allegation dealt with here was false. They remain silent on that point.

Notwithstanding all this I am obliged by the law, announced in the Hart case, supra, to deny any relief for the sham allegation in the complaint.

Dealing now with the sufficiency of the complaint as a matter of law: Looking to the language of the complaint, which is alleged by way of confession and avoidance. Is it an avoidance or a sufficient answer in law to allege that one entered into a contract in good faith, but in ignorance of the law making the contract void as against public policy? The answer to this is no; ignorance of the law, under such conditions, is no excuse. "Acquiescence in an illegal scheme is as much a violation of the Sherman Act as the creation and promotion of one." United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915, 931. The consideration for the agreement here sued upon permeates each of the covenants and conditions thereof. Mr. Justice Black, in the Katzinger case (Edward Katzinger Co. v.

Chicago Metallic Mfg. Co.), 329 U.S. 394, 67 S.Ct. 416, 424, 91 L.Ed. 374, refers to a consideration of this type of an "integrated" consideration,[1] meaning thereby, I believe, that the consideration permeates and affects the contract in all its parts, and therefore the contract is not severable.

 The record discloses that the parties here are in pari delicto. Nor is plaintiff's position strengthened by alleging that it relied upon defendant's assertion that the agreement was valid, since the Sherman anti-trust law speaks in the public interest to the contrary and in a louder and more commanding voice. The position of the parties is that they are left where they have placed themselves and neither of them may resort to the Court for relief. Nor is it permissible to urge economic coercion as an excuse. These conclusions are arrived at after a study and analysis of certain cases. In the interest of brevity quotations from the opinions have been avoided as far as possible. Therefore one reading this opinion should resort to the cases.[2]

This motion to strike the complaint is nothing more or less than the old straight out, general demurrer directed to the face of the complaint, and a judgment will be entered sustaining the motion.

---

[1] See definition of an integrated contract in Restatement of the Law Contracts, Vol. 1, Chap. 9, Sec. 228, "an agreement is integrated where the parties thereto adopt a writing or writings * * *" "An integration is the writing or writings so adopted." Mr. Justice Black is not, I believe, using the words "integrated consideration" in the sense that the consideration is a "written" consideration.

[2] Frederick Hart & Co. Inc. v. Recordgraph Corp., 3 Cir., 169 F.2d 580; Carroll v. Morrison Hotel Corp., 7 Cir., 149 F.2d 404; Tahir Erk v. Glenn L. Martin Co., 4 Cir., 116 F.2d 865; Chitty on Pleading, Vol. I, 7th Amer. Ed. pp. 574–575; Rules of Civil Procedure for the District Courts of the United States, with notes as prepared under the direction of The Advisory Committee and Proceedings of the Institute on Federal Rules, (Mr. Sunderland p. 295); United States, to Use of and for Benefit of Foster Wheeler Corp. v. American Surety Co., D.C., 25 F.Supp. 225; Gordetsky v. Shell Eastern Petroleum Products, 3 Cir., 101 F.2d 760; United States v. Paramount Pictures, 334 U.S. 131, 68 S.Ct. 915; Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 424, 91 L.Ed. 374; MacGregor v. Westinghouse, 329 U.S. 402, 67 S.Ct. 421, 424, 91 L.Ed. 380; Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165; United States v. Trenton Potteries, 273 U.S. 392, 47 S.Ct. 377, 71 L.Ed. 700, 50 A.L.R. 989; Moore's Federal Practice (1938) pp. 645–647; Moore's Federal Practice, 2nd Ed. (1948) pp. 2247–2255; Frederick Hart & Co. v. Recordgraph Corp., D.C. 73 F.Supp. 146; U. S. v. Aluminum Co. of America, 2 Cir., 148 F.2d 416; Murray v. American Export Lines, Inc., D.C., 53 F.Supp. 861; American Ins. Co. v. Bradley Mining Co., D.C., 57 F.Supp. 545; Farrall v. District of Columbia Amateur Athletic Union, 80 U.S.App.D.C. 396, 153 F.2d 647; Sarnoff v. Ciaglia, 3 Cir., 165 F.2d 167; Continental Collieries, Inc. v. Shober, Jr., 3 Cir., 130 F.2d 631; U. S. v. Line Material, et al., 333 U.S. 287, 69 S.Ct. 550.