**METALS DISINTEGRATING CO., Inc. v. REYNOLDS METALS CO.**

Civ. A. No. 1120.

United States District Court,
D. Delaware.

May 18, 1951.

Arthur G. Connolly, of Wilmington, Del., Drury W. Cooper, Jr., and W. D. Keith (of Cooper, Byrne, Dunham, Keith & Dearborn), of New York City, for plaintiff.

Thomas Cooch (of Morford, Bennethum, Marvel & Cooch), of Wilmington, Del., and Raymond F. Adams and Curt Von Boetticher, Jr., of New York City, for defendant.

LEAHY, Chief Judge.

This is a patent infringement suit. After my earlier decision[1] denying defendant "Reynolds'" motion for summary judgment, Reynolds filed an answer to the amended complaint in which five affirmative defenses are contained. Plaintiff "Metals Disintegrating" now moves to strike paragraphs 23 to 25 (the second affirmative defense) of the answer, "on the ground that the defense as stated is *res adjudicata* between the parties to this case by reason of the decision of the United States District Court for the District of New Jersey * * * which decision was affirmed on appeal by the United States Court of Appeals * * *."[2] The motion seeks in addition to strike paragraph 25 of defendant's answer on the specific ground the District Court in New Jersey decided and the Court of Appeals affirmed that the license agreement of November 29, 1939, referred to in paragraph 25, is not an existing agreement.

The second affirmative defense is the only part of defendant's answer brought in question by plaintiff's present motion to strike, in order to test defendant Reynolds' legal position when, to use its own words, it "pleads a license under the patents in suit by reason of the agreement of November 29, 1939."[3]

Plaintiff's argument in support of its motion to strike runs this way: On November 29, 1939, plaintiff licensed defendant under certain of plaintiff's patents. The agreement was honored by the parties during the period 1939-1946. In 1946, defendant Reynolds refused to pay further royalties because it asserted the license was in violation of the antitrust laws, and likewise refused to accept an amended agreement proffered by plaintiff Metals Disintegrating in which the latter offered and sought to remove the objectionable provisions. Subsequently, Reynolds—defendant here—brought suit in the federal District Court in New Jersey,[4] alleging the agreement violated the antitrust laws and seeking return of the royalties paid under the license. In that action, Reynolds contended the contract was " * * * from its inception * * * in whole illegal and void." Judge Fake granted the motion of Metals Disintegrating to dismiss the complaint as legally insufficient, holding the license agreement was illegal as violative of the antitrust laws, that the parties thereto were in *pari delicto,* and neither party could resort to the court for relief under the agreement.[5] Plaintiff in the case at bar argues that in the face of such a holding, defendant Reynolds cannot, now, rely upon this contract to give it the preferred position of a licensee, with the accompanying immunity from the present patent infringement suit. Apart from the in *pari delicto* holding of the two courts in the New Jersey action, plaintiff argues further the holding that the agreement was illegal means the agreement was void and not merely voidable. Plaintiff relies upon the authorities cited by the Court of Appeals in its opinion; moreover it stresses the position taken on appeal by the present defendant when it was the plaintiff in the New Jersey action, viz., that the effect of Judge Fake's decision was to leave the parties in the same position they occupied prior to the execution of the agreement. In short, the argument is the New Jersey court held that the license agreement of November 29, 1939 "is not an existing agreement" and *a fortiori* the second affirmative defense of license cannot validly be pleaded.

1. Metals Disintegrating Co., Inc., v. Reynolds Metals Co., D.C.Del., 92 F.Supp. 896.

2. See Reynolds Metals Co. v. Metals Disintegrating Co., D.C., 8 F.R.D. 349, affirmed, 3 Cir., 176 F.2d 90.

3. Defendant's Memorandum, p. 2.

4. Hereinafter referred to as the "New Jersey action".

5. D.C., 8 F.R.D. 349, 354, affirmed, 3 Cir., 176 F.2d 90.

Defendant Reynolds in opposition to the plaintiff's present motion asserts the New Jersey Court made no such holding. It rests its conclusion in part on the ground that Metals Disintegrating, upon Judge Fake's granting of the motion for summary judgment to the extent of dismissing the complaint, proposed an order to him in which it used language which, if the Court would have signed the order, would have constituted a finding the license agreement was void as violative of the Sherman Anti-Trust Law, 15 U.S.C.A. §§ 1–7, 15 note. Judge Fake, however, did not sign the proposed order; instead he signed an order submitted by Reynolds which held the parties were in *pari delicto* and the Court would, therefore, leave them where it found them. Moreover, Reynolds argues the Court of Appeals did not hold the agreement void but simply affirmed the finding of Judge Fake that the parties were in *pari delicto*. Reynolds further claims that Metals Disintegrating, throughout the proceedings in New Jersey, never affirmatively took the position the license agreement was nonexistent. Reynolds agrees with plaintiff to the extent that the New Jersey action is *res adjudicata,* but argues that the application of *res adjudicata* must lead to the conclusion that the license agreement exists because the New Jersey Court declined to hold the agreement void.

From the present arguments of the parties they are essentially in issue as to what was decided in the New Jersey action. If Judge Fake's decision means the license agreement is void, Reynolds cannot now rely on the agreement as a defense to Metals Disintegrating's suit for patent infringement. If, on the other hand, Judge Fake's decision means the license agreement was not void, then Reynolds is in the quite enviable position of being a licensee under a valid patent for which it need not pay any future royalties because the parties were once in *pari delicto* with relation to that agreement and because of that it may presently assert such a complete defense to any patent infringement suit by Metals Disinte-

grating now or hereafter brought. Judge Fake's opinion is silent as to whether the license agreement is void or whether it remains in existence. All Judge Fake decided was " * * * the parties are in pari delicto * * * The position of the parties is that they are left where they have placed themselves and neither of them may resort to the Court for relief." [6] The opinion of the Court of Appeals affirming Judge Fake was in accord with the quoted portion of Judge Fake's decision.[7] Only through a process of judicial exegesis calling for intuitive insight is it possible to decide exactly what was the holding, if any, as to the future existence of the license agreement.

■ 1. The gist of the plaintiff's suit here is the allegation plaintiff has purged itself of any illegal conduct committed by it in the past. This contention was first urged in plaintiff's amended complaint filed in this court on August 30, 1949. By this time Judge Fake's opinion had already been affirmed by the Court of Appeals. As I pointed out in my previous opinion in this case,[8] there was no consideration given to the question of the effect of plaintiff's purging itself either in the trial court or in the appellate court in the New Jersey action. The reason, of course, for the absence of any judicial reference to the matter of purge in the New Jersey litigation is simply that plaintiff here did not urge it. To hold that Judge Fake decided the license agreement could be used in the future by Reynolds to defeat any suit for patent infringement brought by Metals Disintegrating when the contention which Metals Disintegrating makes here—namely, that it has purged itself of any illegal conduct—was not raised and possibly could not have been raised before the New Jersey Court, would be to take undue liberties with the language of Judge Fake's and the Court of Appeals' opinions. It would have the effect of forever branding Metals Disintegrating with the stamp of its once illegal conduct. Such a tortured construction of plain written words does not recommend itself to me

6. 8 F.R.D. 349 at page 354.

7. 3 Cir., 176 F.2d 90 at page 92–93.

8. 92 F.Supp. 896, 898.

for neither the New Jersey Court nor the Court of Appeals explicitly stated an opinion as to the continued existence of the license agreement. The intent of both Courts was to deny to both parties any judicial relief under the particular facts which they had before them. This intent is plainly expressed. It certainly would be inconsistent with this intent and the language used to say both Courts desired to give either party any special advantage on the basis of their past conduct. If Reynolds is to emerge from the New Jersey action with a valid license which it may assert in the case at bar, then Reynolds would be a gratuitous beneficiary of a judicial largess which was, I think, never intended. The inference which must be drawn from the opinions, therefore, is that the license agreement was void.

■ 2. It may be that holding the license agreement void gives to Metals Disintegrating an advantage which was never intended. But the argument is unconvincing when it is recognized that merely holding the agreement void gives no advantage to Metals Disintegrating because, in order to hold Reynolds for patent infringement here, Metals Disintegrating must still prove that it has purged itself of all illegal conduct. Metals Disintegrating should have this opportunity. There is nothing in the New Jersey litigation which leads to a contrary conclusion.[9]

Judge Parker's recent opinion in Westinghouse Electric Corp. v. Bulldog Electric Products Co., 4 Cir., 179 F.2d 139, enforces the decision reached here. There it was held even assuming some of the provisions of a license agreement *were* void there is no valid reason to deny *after* purge the aid of a court of equity in the protection of the patentee's rights as against infringers. This conclusion had already and has since been reached in B. B. Chemical Co. v. El-

lis, 314 U.S. 495, 498, 62 S.Ct. 406, 86 L.Ed. 367; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 493, 62 S.Ct. 402, 86 L. Ed. 363; Sylvania Industrial Co. v. Visking Corp., 4 Cir., 132 F.2d 947, 958; Campbell et al. v. Mueller, 6 Cir., 159 F.2d 803.

The plaintiff's motion to strike paragraphs 23 to 25 of the defendant's answer to the amended complaint will be granted.

9. Even if I decided here that Judge Fake's decision was not a determination on the merits of the continued validity of the license agreement and therefore not *res adjudicata* on me, my decision would not be changed. Plaintiff's contention of purge was not before Judge Fake and it logically follows he could not undertake to adjudicate rights under conditions

which might never exist. The effect of my present holding is that the license agreement is void and plaintiff should be allowed the opportunity to show that it has purged itself. Cf. American Lecithin Co. v. Warfield Co., D.C.N.D.Ill. E.D., 42 F.Supp. 270, affirmed 7 Cir., 128 F.2d 522.