EDWARD KATZINGER CO. *v.* CHICAGO METALLIC MANUFACTURING CO.

Nos. 70 and 71. Argued November 14, 15, 1946.—Decided January 6, 1947.

*Charles J. Merriam* argued the cause for petitioner. With him on the brief was *Stanley Hoods.*

*Max W. Zabel* argued the cause for respondent. With him on the brief was *Ephraim Banning.*

*Acting Solicitor General Washington, Assistant Attorney General Berge, Charles H. Weston* and *Philip Marcus* filed a brief for the United States, as *amicus curiae.*

MR. JUSTICE BLACK delivered the opinion of the Court.

The question here is whether the defendant, in a suit to recover royalties only under a terminated patent license agreement containing price-fixing provisions, can challenge the validity of the patent despite a covenant in the license contract that he would not do so.

The petitioner, Edward Katzinger Company, and the respondent, Chicago Metallic Mfg. Company, make and sell tin baking pans. The undenied testimony was that Metallic sold its pans over a large part of the United States, probably in every state in the country. Katzinger became owner of Jackson patent No. 2,077,757 on a certain type of pan.[1] Metallic, accused of infringing, entered into a licensing contract under which, upon payment of stipulated royalties, it was authorized to manufacture and sell pans made in accordance with the claimed invention.

---

[1] Other patents, originally in suit, are not involved in this case.

396

Sections 3 and 11 of the license contract, set out below,[2] provided that Metallic, like all other licensees, should sell these pans at prices fixed by Katzinger. Royalties were to be computed on the basis of "net sales" of articles "made in accordance with any of the patents or applications under this license." Section 14 provided that if Metallic elected to terminate the contract, without ceasing to manufacture the pans, Metallic should "be estopped from denying the validity of said patent . . . and be deemed

---

[2] "3. Licensor agrees that while this agreement remains in force and effect, if it permits others under license or other agreement to manufacture or sell articles or devices embodying or made in accordance with any of the patents or applications hereinbefore described, upon terms more favorable than those granted the Licensee hereunder, the Licensor shall immediately notify the Licensee hereunder and grant the same terms to the Licensee."

. . . . .

"11. Licensor reserves the right to establish a minimum sales price for the articles or products which Licensee is licensed to manufacture hereunder and to modify or change such minimum prices from time to time during the life of this agreement. The Licensor, as well as Licensee and any other person, persons or corporation licensed by Licensor, shall not, with the consent of Licensor, sell or offer for sale, or otherwise dispose of any of the licensed devices or products below said minimum sales price, or on more favorable terms of sale than those set forth in any such scale of prices so established by Licensor. Contemporaneously with the execution and delivery of this license agreement, Licensee has received from Licensor a schedule of minimum prices, effective as of the date hereof, below which none of the products or devices made under this license shall be sold. Licensor reserves the right, upon thirty (30) days' notice in writing given by Licensor to Licensee, to change said minimum prices from time to time during the life hereof. On such articles or devices made and sold by Licensee as to which Licensor shall have failed or neglected to establish a minimum sales price, the royalty shall likewise be computed on the net sales price received by Licensee from its customers. Licensee or its duly authorized representatives shall have access from time to time to the books of account of Licensor during ordinary business hours for the purpose of determining whether or not Licensor has complied with the provisions of this paragraph."

an infringer thereof." Metallic maintained the patentee-fixed prices and paid royalties on pans deemed by it to be covered by the patent.[3]

A controversy later arose as to whether certain types of pans manufactured by Metallic were covered. Declining to pay royalties on this type of pan, Metallic gave notice of termination of the contract and initiated this action for a declaratory judgment praying that the court declare that the patent was invalid for want of invention and that the controversial pans were not covered by, and did not infringe, any of Katzinger's patents. Katzinger in an answer and counterclaim alleged, so far as material here, that the patent covered all the Metallic pans, that Metallic was estopped to challenge validity of the patent by § 14 of the contract, and that Metallic either owed royalties or was liable for infringement. It prayed, among other things, for an accounting for unpaid royalties which were to be computed at 2.5% to 5% of the sales price which was governed by the minimum price list attached to the license.[4] In the alternative it prayed that Metallic be required to account for profits and damages as an infringer. The District Court held that Metallic was estopped to challenge the validity of the patents, and, treating them as valid, found that the patent claims did cover all the pans. Accord-

---

[3] Of course it is the unlawful agreement, whether it is executed or not, which violates the anti-trust laws. *United States* v. *Socony-Vacuum Oil Co.*, 310 U. S. 150; *American Tobacco Co.* v. *United States*, 328 U. S. 781, 809. In the cases here the parties stipulated that "in pursuance of this license agreement Metallic did, for a period of two years more or less, exercise the license therein given by making certain tinware products," maintaining "minimum prices and paying therefor the applicable royalties." While the court originally made findings to the effect that Metallic did not attempt to carry out the price-fixing agreement and was willing to have it removed from the contract, these findings were expressly vacated on remand.

[4] The schedule of minimum prices incorporated by reference into the license agreement was set out as an exhibit in Katzinger's counterclaim.

ingly, it ordered an accounting to determine royalties due for the period prior to termination of the license contract, and for infringement damages thereafter.

Relying upon our decision in *Sola Electric Co.* v. *Jefferson Electric Co.,* 317 U. S. 173, the Circuit Court of Appeals reversed. It held that the agreement to fix prices was inseparably connected with the agreement to pay royalties; that if the patent was invalid, the price-fixing provision violated the federal anti-trust laws; that conflict of the price-fixing provision with the anti-trust laws would make the agreement to pay royalties unenforceable; and that the District Court had erred in barring Metallic from challenging the patent's validity as a predicate to establishing the illegality and consequent unenforceability of the royalty covenant. The cause was remanded to the District Court to pass upon validity of the patent. 139 F. 2d 291. That Court then held the patent invalid and rendered judgment for Metallic. The Circuit Court of Appeals affirmed. 153 F. 2d 149. We granted certiorari because of a conflicting decision in *Westinghouse Electric & Mfg. Co.* v. *MacGregor,* 350 Pa. 333, 38 A. 2d 244. The Pennsylvania Supreme Court in the *MacGregor* case ruled that price-fixing provisions in a license agreement such as the one before us were severable from the agreement to pay royalties, and read our *Sola* case as though it were a holding that a licensee was estopped to challenge a patent's validity except in cases where a licensor sought affirmative relief to enforce price-fixing provisions of a license.

We need not consider whether under the ruling of *Bement* v. *National Harrow Co.,* 186 U. S. 70, 87–91, these price-fixing provisions would be lawful if the patent were valid. The question here is entirely different. Nor need we, as it has been suggested, discuss this Court's opinions in *Kinsman* v. *Parkhurst,* 18 How. 289, and *United States*

v. *Harvey Steel Co.*, 196 U. S. 310, which were concerned with particular circumstances there involved. In the *Sola* case we declined to examine these prior decisions, holding that neither of them was relevant because "no price-fixing stipulation was involved in the license contract" at issue in those cases. So here, it would be inappropriate to re-examine those decisions now. Under what other circumstances a federal rule of estoppel might be applied is a question which can be met when particular facts present it.

The *Sola* case reaffirmed past decisions holding that price-fixing agreements such as those here involved are unenforceable because of violations of the Sherman Act save as they may be within the protection of a lawful patent. That case held further that local rules of estoppel cannot screen such agreements from court scrutiny, and that federal courts must, in the public interest, keep the way open for the challenge of patents which are utilized for price-fixing of interstate goods. It is true that the licensor there not only sought a recovery of royalties, but prayed generally for an injunction to require observance of all the provisions of the license agreement, one of which provisions was for price-fixing. But that the chief object of that suit was to recover royalties and not to require observance of the price-fixing provisions is indicated by the fact that, while breaches of other covenants of the contract were alleged in the petition, and specific prayers for their observance were included, there was no charge that the licensee had breached the price-fixing covenant and there was no specific prayer to require observance of it. Nor did this Court indicate that the patent would have been immune from challenge had the licensor sued for royalties only. This would have permitted a licensor to be protected on an illegal contract merely because he chose one remedy rather than another on the same sub-

stantive issue. If we had intended to draw such a fine line, it is hard to believe that such a careful writer as the late Chief Justice would have failed to indicate in the opinion or the mandate of the Court in the *Sola* case that on remand the trial court, while permitting challenge of the patent to defeat the injunction, must treat the price-fixing provision as severable, and forbid challenge for the purpose of defeating the claim for recovery of royalties.[5] That decision, instead of resting on such a narrow procedural base, was firmly grounded upon the broad public interest in freeing our competitive economy from the trade restraints which might be imposed by price-fixing agreements stemming from narrow or invalid patents. *Sola Electric Co.* v. *Jefferson Electric Co., supra* at 177.

In *Scott Paper Co.* v. *Marcalus Co.*, 326 U. S. 249, it was held that even an assignor who had sold a patent issued to itself was free to challenge the validity of the patent and thereby defeat an action for infringement by showing that the invention had been described in an expired patent. In thus emphasizing the necessity of protecting our competitive economy by keeping open the way for interested persons to challenge the validity of patents which might be shown to be invalid, the Court was but stating an often

---

[5] The cases cited in the *Sola* decision rejected contentions that the offending price-fixing provisions should be considered severable from the rest of the contract and therefore enforceable. See *e. g., Bement* v. *National Harrow Co.*, 186 U. S. 70, 88; *Continental Wall Paper Co.* v. *Louis Voight & Sons Co.*, 212 U. S. 227, 230, 266.

That this Court's attention was called in the *Sola* case to this question is shown by examination of the brief filed here for *Sola* which cited decisions of this Court to support a contention that the provisions for royalties and price-fixing were inseparable and that royalties must be denied if the price-fixing provision were illegal. *Morton Salt Co.* v. *Suppiger Co.*, 314 U. S. 488; *Loud* v. *Pomona Land & Water Co.*, 153 U. S. 564, 576; *Williams* v. *Bank of the United States*, 2 Pet. 96.

expressed policy that "It is the public interest which is dominant in the patent system," *Mercoid Corp.* v. *Mid-Continent Investment Co.,* 320 U. S. 661, 665, and that the right to challenge "is not only a private right to the individual, but it is founded on public policy which is promoted by his making the defence, and contravened by his refusal to make it." *Pope Mfg. Co.* v. *Gormully,* 144 U. S. 224, 235.[6]

If the question of severability, urged by the petitioner here, were a new one, we should again arrive at the conclusion we reached in the *Sola* case. Metallic's obligation to pay royalties and its agreement to sell at prices fixed by Katzinger constituted an integrated consideration for the license grant. Consequently, when one part of the consideration is unenforceable because in violation of law, its integrated companion must go with it. See *Hazelton* v. *Sheckells,* 202 U. S. 71, 78. Moreover, solicitude for the interest of the public fostered by freedom from invalid patents and from restraints of trade, which has been manifest by the line of decisions of which the *Scott Paper Co.* and *Sola* cases are two of the latest examples, requires that there should be no departure from the guiding principles they announced.

The royalties here claimed accrued, if they accrued at all, prior to the time the license agreement terminated. Consequently, the fact of subsequent termination does not free the promise to pay royalties from the taint of the price-fixing provision. Nor does the fact, if it be a fact, that Metallic itself suggested the price-fixing provision, bar Metallic's challenge to the patent's validity. For the contract was still illegal, whoever suggested it, so that there is no less reason for leaving the way open to challenge the patent as a service to the public interest than if Katzinger had suggested price-fixing. Finally, Metallic's

---

[6] See *Morton Salt Co.* v. *Suppiger Co., supra* at 492.

specific contract not to challenge the validity of Katzinger's patent can no more override congressional policy than can an implied estoppel. See *Scott Paper Co.* v. *Marcalus Mfg. Co., supra,* at 257 and cases cited.

*Affirmed.*

[For dissenting opinion of Mr. Justice Frankfurter, concurred in by Mr. Justice Reed, Mr. Justice Jackson and Mr. Justice Burton, in this case and in *MacGregor* v. *Westinghouse Mfg. Co.,* see *post,* p. 408.]