## DOLE REFRIGERATING CO. v. KOLD-HOLD MFG. CO.

### No. 11,066.

United States Court of Appeals
Sixth Circuit.

Dec. 14, 1950.

Henry M. Huxley, Chicago, Ill. (Thomas B. Moore, Detroit, Mich., Norman S. Parker, Henry M. Huxley, Chicago, Ill., on the brief), for appellant.

Clarence B. Zewadski, Detroit, Mich. (Clarence B. Zewadski, Detroit, Mich., on the brief), for appellee.

Before ALLEN, MARTIN and MILLER, Circuit Judges.

MARTIN, Circuit Judge.

The appellant, Dole Refrigerating Company, brought an action in the district court against the appellee, Kold-Hold Manufacturing Company, seeking specific performance of a contract in writing between the parties of date November 1, 1941; an injunction against the manufacture, sale and use by appellee of refrigerating plates made under Kleist Patents, Nos. 1,824,158 and 2,217,702; and an award of damages re-

sulting from the alleged breaches of the contract by appellee and of profits and damages resulting from sales by appellee of refrigerating plates embodying the invention of the Kleist patents.

In its answer appellee denied that it had breached the contract, asserting that none of the products being manufactured by it come within the scope of the claims of the Kleist patents. Appellee averred that, since the date of the contract, its products have followed teachings of patents owned by it and by others prior in time to the earliest date of any of the inventions of the two Kleist patents; and that, correctly interpreted, the claims of the Kleist patents, in view of their specifications and drawings and in the light of the prior art, do not read on any of the products manufactured and sold by it since the date of the contract between the contending parties. The appellee pleaded further that, under the interpretation which appellant is attempting to place upon it, the contract of November 1, 1941, is contrary to the Anti-Trust Statutes of the United States and is unenforceable in equity; that appellant is attempting to extend its patent monopoly to products not covered by the two Kleist patents, contrary to law and public policy; and that appellant does not come into equity with clean hands. The appellee therefore prayed that the complaint be dismissed with costs, that its products under present manufacture be adjudged not to infringe any claims of either of the Kleist patents, and that appellant be perpetually enjoined from prosecuting or threatening to prosecute against appellee and its privies any action asserting that the products now being made by it infringe either of the Kleist patents.

After the trial of the case the district court filed an opinion, embracing findings of fact, and subsequently entered final judgment dismissing the complaint. It was adjudged that appellee has not breached its contract with appellant and that the contract is invalid, being in violation of the Anti-Trust Laws of the United States except for the provision wherein appellee agrees to discontinue the manufacture, sale, or use of truck plates embodying the apparatus, process, or method contained in the claims of the two Kleist patents.

Tranter, president of the appellee company, was joined as a party defendant. The district court held that no action lies against him, for the reason that he was not a party to the contract and was not the *alter ego* of the appellee company. In its statement of points on this appeal, appellant does not charge error in the dismissal of the action as to Tranter.

The background of this justiciable controversy first will be set forth. Both parties to this litigation have long been engaged in the manufacture of refrigerating panels installed in insulated truck bodies, or on counters, for the preservation of perishable foods. On August 25, 1936, the United States Patent Office issued Letters Patent, Chamberlain No. 20,520,114, of which appellee was assignee, for an invention relating to refrigeration and heating and more particularly to a process and apparatus for heat conveying in conjunction with refrigerating or heating units, the heat being conveyed from an interior space to be cooled to a medium which absorbs heat in changing from a solid to a liquid form. Appellee, as owner of the Chamberlain patent, sued appellant in the United States District Court for the Northern District of Illinois to enjoin appellant from making and selling "hold-over" refrigerating plates in which a vacuum is employed to cause the sides of the refrigerating plate to be forced inwardly by the excess atmospheric pressure as explained by Chamberlain. This suit was abandoned by dismissal without prejudice because of the decision of the Court of Custom and Patent Appeals affirming a patent office decision holding that Chamberlain's alleged invention had been anticipated by Kleist, who, on January 2, 1936, had filed in the patent office an application for substantially the same thing described by Chamberlain. Chamberlain v. Kleist, 112 F.2d 846, 27 C. C.P.A., Patents, 1300.

As a result of the interference proceeding culminating in this decision, claims one to fourteen of the Chamberlain patent were awarded to Kleist and became claims four to twenty of his patent No. 2,217,702.

On November 1, 1941, a contract in writing was entered into between the appellant and the appellee in which it was recited that Kold-Hold Manufacturing Company had manufactured and sold refrigerating devices infringing Kleist Patent No. 2,217,-702, after the issuance of that patent, and had sold vacuum devices infringing the Kleist patent No. 1,824,158, issued September 22, 1931, both patents being owned by Dole; and that both parties had decided to settle the controversy between them without the necessity of litigation. Kold-Hold agreed to cease immediately the manufacture, sale, or use of vacuum truck plates wherein the atmospheric pressure on the exterior of the plate is greater than that on the interior of the plate and to discontinue the manufacture, sale, or use of truck plates embodying the apparatus, process, or method contained in the claims of the two Kleist patents. Kold-Hold agreed also that, beginning six months from the date of the contract, it would discontinue using in all other products handled by it the vacuum principle wherein the pressure of the atmosphere on the outside of the product is greater than that on its inside. Kold-Hold agreed further that, after the expiration of six months from the date of the contract, it would not "use the vacuum principle in any of the products handled by Kold-Hold either directly or indirectly regardless of how the difference in pressure between the exterior of the product and the interior of the product is secured." Kold-Hold admitted in the agreement that the two Kleist patents are valid, and agreed not to contest their validity directly or indirectly during the life of the patents. In consideration of the covenants and agreements by Kold-Hold, the appellant agreed not to bring suit against Kold-Hold on the Kleist patents and to release it from any and all damage and profits resulting from its past infringement of either of the patents "on the condition and so long as Kold-Hold keeps all of its covenants and agreements set out in this contract."

The instant suit was filed by Dole on April 9, 1946, for the alleged breach by Kold-Hold of the foregoing contract. The case went to trial before Judge O'Brien, who, after both parties had rested on their proof, took it under advisement but died before he could decide it. The case was reassigned to Judge Picard. By agreement of counsel, the case was retried on the record made before Judge O'Brien. As heretofore stated, Judge Picard included in his opinion findings of fact which are supported by substantial evidence and are not clearly erroneous. Dole Refrigerating Co. v. Kold-Hold Manufacturing Co., et al., D.C.E.Mich., 86 F.Supp. 323. We consider it unnecessary to set forth in this opinion the fact findings of the district court, for the reason that in our discussion hereinafter the patented article and the accused device are described in much the same manner as that in which the district court describes them.

■ Announcing that the entire purpose of the invention must be looked to to determine whether appellee's use of the vacuum principle constituted infringement, the district court said that, while no eutectic was used in Kleist patent No. 1,824,158; the chief patent in question, Kleist No. 2,-217,702, has brine filling which takes up ninety percent of the interior; and that the purpose of the vacuum is twofold: first, to accommodate the expansion on solidification; and, second, to hold the sides rigid against the fins, the Kleist vacuum being considerably greater than the vacuum resulting from appellee's pressing. It was pointed out that appellee gets a bulge which it is able to control, while appellant's product has no bulge. The court declared that plaintiff has no monopoly on vacuums, the long-established rule being that the function of a machine is not patentable. Westinghouse v. Boyden Power Brake Co., 170 U.S. 537, 569, 571, 18 S.Ct. 707, 42 L.Ed. 1136, was cited. The district judge asked this rhetorical question: "Is all future development of these refrigerator panels to be impeded or perhaps completely blocked because some place along the line a vacuum is created?" He thus answered his own question: "We do not believe that this is the function of the courts in upholding patents and while we do not deem either Kleist patent invalid, we nevertheless feel that they have not been infringed because of

the admitted novelty of the panel and coil construction of defendant's patent and because the vacuum principle is not utilized by defendant to hold the sides rigid against the fins or accommodate the expanded eutectic on solidification. Whatever use is made by defendant of the vacuum is insignificant and immaterial compared to the important part it plays in the Kleist patent."

The district court stated further that, if the plaintiff contends that the unique and protected feature of its patent is the vacuum principle itself applied to refrigerator panels, the Kleist patent would be invalid as having been anticipated by Manwaring No. 673,561, which was issued in 1901, Manwaring's teachings being the use of a chamber partially filled with water, boiling the water, and then hermetically sealing the chamber, thus creating a vacuum. The observation was made that no coils or fins are provided for in Manwaring's invention, but that the entire unit is placed in a refrigerator to be frozen. Manwaring had asserted that the purpose of a vacuum is to prevent a rupture of the unit, that being also what Kleist said about his vacuum. The court pointed out that Manwaring uses a vacuum, though obtained by a method other than that employed either by the plaintiff or by the defendant in the manufacture of refrigerator panels. It was reasserted that were plaintiff to insist that it is the vacuum and not the use to which it is put that is more significant, the court would be forced to hold the Kleist patents invalid.

The district judge considered the contention of appellee that the contract of November 1, 1941, is unenforceable for the reason that it is in illegal restraint of trade in violation of Title 15 U.S.C.A. § 1, and, after discussing authorities, reached the conclusion that all of the restrictive clauses of the contract are invalid except the one requiring Kold-Hold immediately after the date of the contract to discontinue the manufacture, sale, or use of truck plates embodying the apparatus, process, or method set forth in the claims of the Kleist patents. He regarded this clause of the contract as severable and stated that he felt constrained to follow American Equipment Company v. Tuthill, 7 Cir., 69 F.2d 406. In that view, the district court dismissed the complaint, but wrote into its judgment the following controversial sentence: "The entire contract in question is invalid being in violation of the Federal Anti-Trust laws except for the provision wherein the defendant company agrees to discontinue the manufacture and/or sales and/or use of truck plates embodying the apparatus and/or process and/or method embodied in the claims of the Kleist patent No. 2,217,702 and of the Kleist patent No. 1,824,158."

In order to determine whether Kold-Hold, since the agreement of November 1, 1941, was executed, has infringed the Kleist patents owned by Dole, careful consideration must be given the devices manufactured by the respective parties, each of which is a manufacturer of refrigerating plates used in insulated truck bodies or on counters for the purpose of maintaining a low temperature.

A plate is generally rectangular in shape (usually 2 x 5 feet) and is composed of two sides of sheet metal which when placed together form a rather large hollow chamber. Between these two sheets refrigerating piping is arranged in a serpentine pattern, with the ends of the piping extending through the walls of the panel so that they may be connected to a refrigerating compressor. The coils pass through supporting metal fins located at intervals throughout the length of the plate. This serves the purpose of aiding in the circulation of the refrigerant solution surrounding the coils and of lending rigidity to the plane sides of the plate. Wherever the spacer fins contact the walls of the panel they serve to conduct heat from the surface of the panel to the coils, thus acting in furtherance of the refrigerating function of the plate.

The solution which fills the space within the refrigerating panels is called a "eutectic" and is usually a brine or other solution having a low freezing temperature. When the device is used in a moving vehicle, the panels are pre-refrigerated to provide a cold yielding area. The process is to freeze the eutectic solution, while the vehicle is not in use, by passing a refrigerant (usually ammonia) through the coil. Once the

eutectic is frozen solid the panel is disconnected from the compressor and the truck is ready for use as a refrigerator truck. Eventually the eutectic melts, causing the panel to lose its refrigerating quality and it must be frozen again before the panel is of further use for cooling.

The use and the manufacture of refrigerating plates have not been free from difficulty, for as the Kleist patent No. 2,217,-702, relates: "One of the difficult problems in refrigeration has been to provide a refrigerating device which contains a liquid refrigerant (eutectic), which liquid refrigerant is to be congealed at a very low temperature and held at this low temperature. In such devices heretofore it has not been possible to get a uniform temperature on the outside and it has been difficult to hold the liquid refrigerant and to keep the sides from bulging out and when the liquid refrigerant congeals it has been practically impossible to prevent injury to the device by expansion. Another problem has been the difficulty of securing an efficient heat transfer relationship between the contacting metal parts of the apparatus." (Word in parentheses supplied.)

These difficulties are sought to be obviated by the use of a vacuum in appellant's plate. When it manufactures its panels, the chamber is filled nine-tenths full of eutectic solution, making an allowance for a ten percent expansion of the liquid upon solidification. After the tank is thus filled a vacuum pump is attached to the panel and virtually all the air remaining in the plate after filling is exhausted; then the plate is hermetically sealed. Because of the vacuum thus created (which amounts to 28 inches of mercury), the atmospheric pressure, which is greatly in excess of the pressure within the plate, is effective to compress the sides of the plate together with such force that they are held tightly against the fins surrounding the coils inside the plate. Despite the substantial weight of the eutectic and the tendency of the panel walls to relax or spring back into a bow shape from their flat, pressed shape, the vacuum effectively holds the panel flat. When the refrigerant solution congeals, there is almost a ten percent expansion;

but, because of the vacuum and the consequent great pressure exerted by the atmosphere on the sides of the panel, the greater volume is forced into the void and the sides of the plate remain flat. Because bulging and flexing of the metal is substantially eliminated, the chance of rupture is reduced and a commercially more desirable piece of equipment is produced.

The problem of corrosion is sought to be met by the Kleist invention under discussion. It seems that the presence of free air and other gases in solution in the eutectic has been a contributing cause to corrosion and rusting of the plate from within. The exhaustion of the air from the empty space within the refrigerating plate is effective to permit the dissolved gases to escape from solution and to be pumped out with the other air which fills the void before the plate is exhausted. Removal of the air and gas from the eutectic solution contributes to a more uniform temperature on the panel surface and also to greater efficiency in cooling, according to the specifications of the Kleist patent.

Appellant's device uses a high vacuum for the purpose of removing all air and other gases from the eutectic solution and for the purpose of holding the sides of the panel flat and firmly in contact with the spacing fins as pointed out heretofore. That the vacuum required is a high vacuum is spelled out, not only in the claims of the patent, but it is further indicated by the description of pressure of such magnitude as to cause (1) the sides to press against the interior structure of the panel with sufficient force to form "an intimate heat transfer bond between the same"; (2) "forcible contact" between elements; and (3) films on surfaces in contact pressed together with sufficient force to "cause them to coalesce." It should be observed in this relation that, in order to remove the air and gases from the solution, a substantial vapor pressure vacuum must be achieved (at 70 degrees F., approximately 29 inches of mercury).

In short, the Kleist invention requires a refrigerating plate with sufficient unfilled space to accommodate a ten percent expansion of eutectic on freezing, and such

an exhaustion of air from this space as to achieve a high vacuum for the following purposes: (1) to prevent the bulging of the sides of the plate; (2) to discourage corrosion by the removal of air and gases from the eutectic; (3) to achieve more uniform temperature on the surface of the panel by removing air and gases from the refrigerating solution; (4) to achieve greater efficiency in cooling by exhausting air and gases from the eutectic; and (5) to achieve a more efficient heat transfer relationship by forcing all metal parts into rigid surface contact.

We now turn our attention to the accused plate manufactured by Kold-Hold. Appellee has abandoned the use of the sharp-cornered rectangular plate (used by Dole) and has substituted one, termed "stream-lined." This plate has no edges perpendicular to the sides, but rather the sides gently curve into each other at the edges. The coil within the accused plate is run first around the edges of the chamber whence it describes a serpentine path through the center. By use of the streamlined plate which tapers at the edges giving a smaller volume at these points, and because of the coil arrangement, freezing takes place from the outer edges of the chamber toward the center. The unfrozen liquid migrates to the center where it, too, ultimately freezes. Since the center of the plate is far more flexible than the edges, the bulging which follows from the expansion of the eutectic on freezing is easily accommodated without danger of rupture. Appellant claims that it is before freezing that the infringement takes place.

Appellee's panel, once completed, is laid on a platen and the chamber is filled with eutectic. At this point pressure is applied, compressing the panel until it conforms to commercial specifications. This operation forces out all eutectic in excess of that required to fill the panel when it is flat; and, while the panel is still under pressure, it is sealed. When the pressure is removed, the walls relax, partly because of the resiliency of the metal and partly because of the weight of the liquid within the panel. This relaxation increases the volume of the chamber so that the liquid no longer en-tirely fills the panel; and, as a consequence, a slight differential in pressure is created between the inside of the panel and the atmosphere. It is this slight differential in pressure which forms the crux of this case.

The contention of the appellant is that the existence of this slight vacuum, which amounts to only four inches of mercury when the plate is on its narrow edge and only one inch of mercury when the plate is in operating position, infringes its Kleist patents. Dole insists that the small differential in pressure created in the accused plate is effective to hold the sides of the panel flat and in substantial contact with the heat transfer fins within the plate and also to lessen greatly the bulging of the sides upon freezing. Dole urges further that, when the plate is frozen, the empty space which results from the expansion of the walls of the appellee's plate accommodates the expanded eutectic in the same manner as that of the Kleist device.

Appellee, on the other hand, contends that because freezing occurs at the outer edges first, the liquid cannot get to the void and, even if it could, the void is insufficient to accommodate the ten percent expansion on solidification. Kold-Hold further makes the point that there is no vacuum at all within its plates until the relaxation and expansion of the walls and that, if there is any contact between fins and sides, the contact is caused by the pressure applied by the platen, not by the drawing effect of the vacuum, since there is no vacuum until the sides of the panel move out. Kold-Hold urges that the slight pressure differential is a mere incident of the manufacturing procedure and while it has no useful purpose in the operation of the plate, its presence does not prevent satisfactory performance. It cannot reasonably be insisted by Dole that the vacuum in the accused plate prevents bulging on freezing, for it is shown by appellant's own charts and figures that the accused plates do bulge on being frozen.

We are in accord with the district court in its view that because of the novelty of the coil arrangement in the accused plate and because the vacuum principle is not utilized by appellee to hold the sides rigid

against fins or to accommodate expanded eutectic, no infringement by appellee of Kleist patent No. 2,217,702, has been demonstrated.

Inasmuch as the accused device does not fall within the terms of the claims of the Kleist patents, infringement could be shown only by an application of the doctrine of equivalents. In substance, this doctrine is that a patentee may proceed against the producer of a device if it performs the same function in substantially the same way to obtain the same result. This principle was early enunciated in Winans v. Denmead, 15 How. 330, 14 L.Ed. 717, and it has been applied consistently in cases too numerous to necessitate citation.

In determining equivalents, consideration must be given to the purpose for which an ingredient is used in a patent, the qualities it has when combined with the other ingredients, and the function which it is intended to perform. Graver Mfg. Co. v. Linde Co., 339 U.S. 605, 609, 70 S.Ct. 854.

An examination of the evidence in this case discloses that, though there is present in the accused plate a slight vacuum which may have some effect on the natural bulging of the walls of the panel, such differential in pressure does not perform substantially the same function, in the same manner and with the same result as does the high vacuum coupled with a ten percent void which is used in the Kleist invention.

Indeed, if, as indicated by the trial court, appellant contends that the unique and protected feature of its patent is the vacuum principle itself applied to refrigerator panels, the Kleist patent would be invalid as anticipated by Manwaring No. 673,561, issued in 1901. Manwaring teaches the use of a chamber, partially filled with water. The water is boiled and the chamber is then hermetically sealed, creating a partial vacuum. No coils or fins are called for in the Manwaring invention, but rather the entire unit is placed in a refrigerator to be frozen. The inventor states that the purpose of the vacuum is to prevent rupture of the unit. This was Kleist's purpose also.

Kleist patent No. 1,824,158 teaches the use of a so-called dry refrigerating plate which contains no eutectic and from which all air is exhausted for the purpose of removing all moisture to the end that there will be no formation of frost inside the plate, and for the maintenance of contact between the panel walls and the fins within the chamber. Inasmuch as this patent has expired, we deem it unnecessary to say more than that there is no infringement of that patent by the Kold-Hold plate.

From the foregoing analysis, it is manifest that since the execution of the contract of November 1, 1941, Kold-Hold has not been an infringer of either of the Kleist patents. This being true, the appellee has not breached the contract upon which this suit in equity is grounded. But, even had Kold-Hold infringed the Kleist patents, the instant action could not be maintained; for, in our opinion, the broad scope and coverage of the contract of November 1, 1941, brings it within the inhibition of a contract in restraint of trade condemned by the Anti-Trust Laws of the United States. Title 15 U.S.C.A. § 1.

We are not in accord with the holding of the district court that the contract is severable. To the contrary, we think its provisions must be considered and dealt with in entirety. When this is done, its provisions inhibiting the use of the vacuum principle clearly render it invalid and unenforceable as extending a patent monopoly beyond permissible limits.

The district court stated that it was constrained to follow American Equipment Company v. Tuthill, 7 Cir., 69 F.2d 406. In that case, the court of appeals held that the illegal provisions of the contract so permeated it as to be inseparable from the good, in consequence of which the entire contract was void. We do not read the opinion in the American Equipment Company case as indicating that a contract of the character with which we are dealing should be treated as severable in its provisions. Judge Evans stated that there are certain agreements which, though they deal with patent grants and patent rights, transcend in other respects the field covered by

lawful patent monopoly and are void if they violate the anti-trust laws. He pointed out that license agreements which contain selling-price provisions for non-patented articles cannot avoid the penalties of the Sherman Anti-Trust Act, 15 U.S.C.A. §§ 1–7, 15 note, although valid patent license provisions also appear in the agreement. The opinion in the American Equipment case is deemed to be actually authoritative as indicating the same crucial viewpoint from which this court visualizes the case at bar.

■ It is settled law that one sued upon a contract may set up defensively that the contract violates the Sherman Anti-Trust Act. Bement v. National Harrow Company, 186 U.S. 70, 88, 22 S.Ct. 747, 46 L. Ed. 1058; Sola Electric Co. v. Jefferson Co., 317 U.S. 173, 63 S.Ct. 172, 87 L.Ed. 165. In Katzinger Co. v. Chicago Manufacturing Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374, it was held, in effect, that the valid portions of a contract which is in restraint of trade are not separable from the rest of the contract. The Supreme Court declared: "If the question of severability, urged by the petitioner here, were a new one, we should again arrive at the conclusion we reached in the Sola case [supra]. Metallic's obligation to pay the royalties and its agreement to sell at prices fixed by Katzinger constituted an integrated consideration for the license grant. Consequently, when one part of the consideration is unenforceable because in violation of law, its integrated companion must go with it." 329 U.S. 401, 67 S.Ct. 420, 91 L.Ed. 374.

The following authorities relating to patent contracts in restraint of trade are elucidating in connection with restrictions imposed upon patentees against enlargement of their monopolies beyond the scope of their patents. Ethyl Gasoline Corp. v. United States, 309 U.S. 436, 60 S.Ct. 618, 84 L.Ed. 852; Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 62 S.Ct. 402, 86 L.Ed. 363; United States v. Univis Lens Co., Inc., 316 U.S. 241, 62 S.Ct. 1088, 86 L.Ed. 1408; Scott Paper Co. v. Marcellus Manufacturing Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47; Transparent-Wrap Corp.

v. Stokes and Smith Co., 329 U.S. 637, 67 S.Ct. 610, 91 L.Ed. 563.

It is our conclusion that there should be stricken from the third numbered paragraph of the final judgment entered in the district court the language relating to the exception therein stated which follows the words: "The entire contract in question is invalid being in violation of the Federal Anti-Trust laws"; and it is so ordered. With this modification, the final judgment of the district court is affirmed. The costs here and in the court below are taxed to appellant.