**NATIONAL CASH REGISTER CO. v. REALTY & INDUSTRIAL CORP. et al.**

Civ. A. 556–50.

United States District Court
D. New Jersey.

Dec. 12, 1951.

FORMAN, Chief Judge.

Defendants Realty and Industrial Corporation and William S. Gubelmann have entered objections to certain interrogatories propounded by plaintiff, National Cash Register Company. The said defendants also moved for an order directing that this cause be set down for the purpose of trying separately the issues raised by paragraph 3 of the answer filed herein and directing that the trial and all matters incidental thereto of the remaining issues of the complaint and answer be deferred pending determination of the first mentioned issue.

First I will discuss and rule upon the Objections to Plaintiff's Interrogatories.

Plaintiff alleges in its complaint that it was licensed under certain agreements to use 38 patents issued to defendant William S. Gubelmann, of which 28 have expired. It states that it paid defendants royalties under said agreements from September 12, 1922 to March 31, 1950. In order to resolve the question as to whether the 10 patents which had not expired on March 31, 1950 reached the mechanism of its National Class 3000 machine or National Class 31 machine it seeks a declaratory judgment that it is not obligated in any of its agreements to continue to make royalty payments.

Under Rule 33 of the Federal Rules of Civil Procedure, 28 U.S.C. fol. § 2072, plaintiff has served upon defendants a series of interrogatories for the purpose of ascertaining what mechanisms defendants contend require the continuance of royalties to narrow the issues for trial. The interrogatories 2(a) to 2(f) through 21(a) to (f) are directed to each of the 10 patents as they relate first to the National Class 3000 and then to the National Class 31 machines. Interrogatories 2(a) to (f) are typical of all the others to and including 21(a) to (f) and are as follows:

"2(a). Specify by number each of the 239 claims of said U. S. patent, No. 1,924,-653 that describes any mechanism present in the National Class 3000 machine illustrated and described in Plaintiff's Exhibit 6. (This subparagraph in each interroga-

Pitney, Hardin & Ward, Newark, N. J. (Clarence B. Des Jardins, Cincinnati, Ohio, Robert E. Cowden, Jr., Dayton, Ohio, of counsel), for plaintiff.

Robert Carey, Jr., Newark, N. J. (Newton A. Burgess, H. H. Hamilton, New York City, of counsel), for defendant.

tory is not objected to by defendants and has been answered.)

"2(b). As to each of the claims of U. S. patent No. 1,924,653 specified in the answer to Interrogatory No. 2(a) identify the elements of the mechanism described in said claim by reference to the drawings and reference to numerals of said U. S. patent, No. 1,924,653.

"2(c). As to each of the claims of U. S. patent No. 1,924,653 specified in the answer to Interrogatory No. 2(a) identify, by reference to the numbers of the drawings of Plaintiff's Exhibit 6, the mechanism present in the said National Class 3000 machine that is described in said claim.

"2(d). Specify by number each of the valid claims of said U. S. patent, No. 1,924,-653, in and by which there was patented any invention embodied in said National Class 3000 machine.

"2(e). As to each of the claims of U. S. patent, No. 1,294,653, specified in the answer to Interrogatory No. 2(d), identify the embodiments of the invention patented by said claim and disclosed by said patent, No. 1,924,653, by reference to the drawings and reference numerals of said patent.

"2(f). As to each of the claims of U. S. patent, No. 1,294,653, specified in the answer to Interrogatory No. 2(d), identify the embodiments of the invention patented by said claim and included in the said National Class 3000 machine by reference to the drawings and reference numerals of Plaintiff's Exhibit 6."

Defendants have answered subdivision (a) in each series of interrogatories from 2 to 21, but they object to answering subdivisions (b) to (f) inclusive of each series and state as their reason "The ground on which defendants object to answering the above interrogatories is that none of them calls for a statement of fact, but all of them call for the interpretation of claims of patents referred to in the interrogatories and expressions of opinions and legal conclusions based thereon. In addition, the answers to the (b), (c), (e) and (f) interrogatories of each group would require defendants to make compilations which would involve a great amount of time and expense and these compilations can be made by plaintiff as well as they can be made by defendants."

In particular as to subdivision (b) defendants argue that plaintiff or its counsel is as fully capable as the defendants of reading the patents in question and of determining from such patents the elements thereof that are called for by the claims defendants have specified in answering to subdivision (a) of each interrogatory; that these and all the other interrogatories objected to improperly call upon defendants to construe and interpret the claims of the patents and that they have "a tendency to peek into opponents' preparation for trial". However, interrogatories (a) and (b) do nothing more than to attempt to elicit from the defendants an identification of the elements of the mechanism described in the claims in the patents by reference to the drawings and reference numerals of the patents themselves, and are proper.

In the following interrogatories, series (c), the plaintiff likewise seeks to elicit from the defendants the particular mechanism in the machines of the plaintiff by reference to numbers contained in the plaintiff's drawings of its machines which the defendants contend are described in each of their claims.

In answering series (a) of the interrogatories in question defendants have reduced the patents involved to 7 and the claims from something over 800 to 103.

The defendants argue that they are called upon now to render opinions, give away their evidence to their opponents and incur extraordinary labor and expense in answering the questions.

In this, I cannot agree. Of course it is implicit that the defendants will be obliged to undergo processes requiring thought and analysis of their position in this case. It must, however, be remembered that this is an action for a declaratory

judgment and the plaintiff has alleged that the defendants have no legitimate claim. Defendants, on the other hand, have answered that under the 10 patents (now reduced to 7) they have claims amounting to infringement of their patents and breaches of their agreement for which the plaintiff must be held liable. No matter which way the burden of proof shifts as between the parties to this litigation, ponderously complicated machinery is its subject, and the issues can be tremendously clarified if not indeed reduced in number by the declarations called for by the plaintiff's interrogatories in series (b) and (c).

The furnishing of this information at most can be said only to accelerate the time for the expenditure of labor and disbursement of expense by the defendants, for ultimately they would be obliged to make known their stand with at least equal definitiveness with which they are now called upon to do. And if the plaintiff benefits by knowing accurately the exact elements pictured in the patents' drawings and in their own drawings on which the defendants rest their charges, I can only consider that this is the exact result that the pretrial discovery proceedings of the Federal Rules of Civil Procedure were designed to produce.

However, series (d), (e) and (f) of the interrogatories are not in the same category. In series (d) the defendants are required to specify by number each of the valid claims of the patent in question "in and by which there was a patent and invention embodied" in the National Class 3000 or National Class 31 machine. The (e) and (f) interrogatories, like the (b) and (c) interrogatories, require the defendants to go to the patent drawings and plaintiff's drawings of its machines to point out the respective mechanisms involved by referring to numbers thereon.

The series (d) interrogatories imply the suggestion that some of the claims set forth by the defendants in their answers are valid and others are invalid, and they are required to differentiate their valid claims. The arguments made by the defendants that they should not be required to characterize the claims on which they depend as being valid or invalid seem to aptly support their objections to the (d) series of interrogatories. The claims allowed in the patents have the presumption of validity and the plaintiff is not entitled to call upon the defendants for admissions of invalidity at this stage of the proceedings. Since series (d) interrogatories fail and need not be answered, it follows that series (e) and (f) which rest upon them must also fail.

The objections to (b) and (c) in questions 2 to 21, inclusive, will therefore be overruled and the objections to series (d), (e) and (f) in questions 2 to 21, inclusive, will be sustained.

We come now to a discussion and determination of defendants'

### Motion for a Separate Trial of the Issue Raised by the Third Paragraph of the Answer.

Paragraph 3 of the plaintiff's complaint is as follows: "This action is brought under Section 2201 of Title 28 of the United States Code and arises from an actual controversy between plaintiff and defendants as to the obligations of plaintiff under a certain license agreement of October 1, 1925 between defendant William S. Gubelmann, and The Ellis Adding-Typewriter Company, a certain license agreement dated May 22, 1926, between Remington Cash Register Company, Incorporated, defendant William S. Gubelmann, and plaintiff, The National Cash Register Company, a certain agreement dated March 6, 1929, between plaintiff, The National Cash Register Company, The Ellis Adding-Typewriter Company, defendant William S. Gubelmann, and Remington Cash Register Company, Incorporated, a certain agreement dated March 6, 1929, between defendant William S. Gubelmann, and The Ellis Adding-Typewriter Company, and a certain assignment dated December 31, 1934, from The Ellis Adding-Typewriter Company to

plaintiff, The National Cash Register Company, copies of said instruments being annexed hereto and made a part hereof and marked Plaintiff's Exhibits, 1, 2, 3, 4 and 5, respectively. Plaintiff contends that, by reason of the expiration of many of the patents under which it was licensed by said agreements, it is no longer obligated under said agreements to pay royalties to defendants, or either of them, with respect to certain machines manufactured and sold by plaintiff and known as the National Class 3000 and National Class 31 machines, whereas defendants contend that the obligation to pay royalties under said agreements still subsists, and will continue in force for some indefinite period, with respect to said machines. Plaintiff contends that, under said agreements, royalties are to be paid only with respect to the sale of machines of the type licensed by said agreements which contain any invention patented by any valid claim of any unexpired patent comprehended within the scope of said license agreements, whereas defendants contend that royalties are due under said agreements with respect to the sale of such machines which include any mechanism upon which any claim of any of said unexpired patents may be read, whether such claim be valid or not, and considering the claim independently of the disclosure of the patent containing it. The matter in controversy exceeds, exclusive of interest and costs, the sum or value of Three Thousand ($3000) Dollars. This Court has original jurisdiction of this action under 28 U.S. Code 1332, as a civil action where the matter in controversy exceeds the sum or value of Three Thousand ($3000) Dollars exclusive of interest and costs, and is between citizens of different states."

The answer of defendants to said paragraph 3 is as follows:

"Admitted except that defendants deny that there is any controversy as to Plaintiff's Exhibit 2, and as to the contention of the defendants reference is made to the license agreement, Plaintiff's Exhibit 1, Paragraph Seventh and Fourteenth, as correctly setting forth the position and contention of defendants separately and collectively, the said paragraph Seventh reading as follows: 'Seventh: This license agreement and the royalties to be paid thereunder shall terminate on September 12, 1939, unless on or after that date the Licensee shall continue to make, use, or sell calculating machines of the type licensed hereby which contain mechanism described by any claim in any patent which may be issued on any of the aforesaid applications, which patent shall then be unexpired. In that event the Licensee is to continue and the royalties hereby provided are to be paid in respect of any such machines made or sold during the life of any such patent having any claim or claims describing any mechanism present in any such machines, but no longer than such machines are made or sold by or for the Licensee;' and

"Paragraph Fourteenth reading in part as follows: ' * * * the royalties herein provided are to be paid on any such machines made or sold during the life of said improvement patents, as long as the Licensee makes, uses, or sells machines of the type licensed hereby, and which contain mechanism described by any claim of any such improvement patent.' Defendants contend that plaintiff has continued, and does continue, to make, use, and sell machines of the type licensed by Plaintiff's Exhibit 1, which contain mechanism described by many of the claims of unexpired patents which issued on applications enumerated in said agreement, Plaintiff's Exhibit 1 and others."

The motion is brought under Rule 42(b), Federal Rules of Civil Procedure, 28 U.S.C. fol. § 2072.[1] The defendants submit the above pleadings create an issue as to the

1. "The court in furtherance of convenience or to avoid prejudice may order a separate trial of any claim, cross-claim, counterclaim, or third-party claim, or of any separate issue or of any number of claims, cross-claims, counterclaims, third-party claims, or issues."

meaning of the language of the license agreement of October 1, 1925 (Plaintiff's Exhibit 1, attached to the complaint) relating to the basis on which royalties were to be paid which should be tried separately and in advance of other issues. They contend that a separate trial would not invoke testimony on the remaining issues but in no event would it be necessary to repeat such testimony and that it would shorten or perhaps avoid the trial of such issues. In the event of such separate trial and the defendants prevail they assert that the controversy would be reduced to the question of whether plaintiff's machines "contain mechanisms described by any claim in any patent" now unexpired and that consideration of such issues as prior art, file histories, etc., would be eliminated and much time of the court and parties and great expense to the litigants will be saved because the patents are voluminous [2] and are for complex calculating machinery.

They urge, among other things, that the affidavits filed in support of the motion and their evidence and arguments will induce an interpretation of the contracts in question to the effect that the parties intended to avoid controversy in determining the scope of the claims of the many licensed patents and in applying the claims to complicated licensed mechanisms and that if a claim allowed in any patent described any mechanism found in the machines in question royalties should be paid thereon entirely independent of the validity or scope of the claims in the various patents. Under these circumstances defendants argue that the authorities support their motion for a separate trial.

Plaintiff, on the other hand, contends that the issue sought to be made the subject of a separate trial is not a separate issue within the meaning of Rule 42, that it is inextricably interwoven with the main issues raised in the case and that it would not be a convenience nor would it avoid prejudice. On the contrary, it claims that a separate trial would be prejudicial to it.

Defendant defines the separate issue in the following language: "The separate issue is what meaning is to be given to the words 'which contain *mechanism described by any claim*' of any of the unexpired patents. *Defendants contend that these words mean just what they say, whereas plaintiff contends that they mean something different, namely, that the accused machines should 'embody the invention' of a claim of the unexpired patents and that this claim should be proved to be valid*. What the motion seeks is a judicial determination of this difference in view between the parties." (Emphasis supplied.)

The defendant over simplifies the "separateness" of this issue. To agree with it would be to anticipate practically the determination of the issue itself.

Plaintiff raises many considerations which it claims intrude themselves into the resolution of this issue which could comprise all of the elements involved in the disposition of the case in its entirety. It proposes as relevant, proof of the nature and scope of the patents referred to in the agreement, the nature of the earlier Ellis calculating machines at the date of the agreement, proof as to prior art as to Gubelmann, and the nature of the mechanisms on which defendants rely.

The plaintiff acknowledges that Paragraph Fourth of the license agreement provides as follows: "Fourth: The Licensee hereby covenants and agrees that it will at all times while this agreement remains in force, recognize and acknowledge the validity of the said letters patent and *patents resulting from said applications* and will not contest or question, or assist, directly or indirectly, in contesting or questioning their validity." (Emphasis supplied.) But it contends that it is not estopped by this covenant from attacking the validity of the ten patents asserted by it to be the basis of this suit since they are neither listed in the agreement nor on applications

2. The 38 patents listed in the complaint contain a total of 941 pages of description, 502 sheets of drawings with 661 figures and 4,137 claims.

352

there listed, but, were issued on applications filed subsequently. It further insists that it will be entitled to insulate itself from the application of the doctrine of estoppel to attack validity on the ground that the effect of the contract is to extend the patent monopoly beyond its normal and lawful limits and cites such authorities as Automatic Paper Machinery Co. v. Marcalus Mfg. Co., 3 Cir., 147 F.2d 608, affirmed Scott Paper Co. v. Marcalus Mfg. Co., 326 U.S. 249, 66 S.Ct. 101, 90 L.Ed. 47; Timken-Detroit Axle Co. v. Alma Motor Co., 3 Cir., 163 F.2d 190; Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374 and MacGregor v. Westinghouse Electric & Mfg. Co., 329 U.S. 402, 67 S.Ct. 421, 91 L.Ed. 380.

Without commiting myself at this time to anticipation of the ultimate correctness of the plaintiff's position it is apparent that it must have the opportunity to lay foundations so that its postulates may be tested.

■ It appears to me that defendants' contention for separateness of the issue is at least beclouded by many complications and there is the strong possibility that in its pursuit the chase may lead far afield from the narrow path to which defendants would like to confine it. The expectancy of economy in time and expense is too speculative to warrant departure from a normal hearing of the entire case even though its volume is apparently mammoth and formidable.

It would appear that much could be done by litigants to reduce the consumption of trial time by appropriate exploitation of pretrial discovery proceedings. As soon as this has been accomplished I will entertain a motion for the designation of a special date for an adequate pretrial conference which may serve to minimize further the time to be spent in the court room.

Defendants' motion for a separate trial will be denied. Orders should be taken by consent or settlement implementing the decisions herein.