**MASSILLON–CLEVELAND–AKRON SIGN CO., a corporation, Appellee,**

v.

**GOLDEN STATE ADVERTISING CO., Inc., a corporation, et al., Appellants.**

No. 25873.

United States Court of Appeals, Ninth Circuit.

June 8, 1971.

Fulwider, Patton, Rieber, Lee & Utecht, William K. Rieber, Los Angeles, Cal., for appellee.

R. Douglas Lyon (argued), Reginald E. Caughey, of Lyon & Lyon, Los Angeles, Cal., for appellants.

Before HAMLEY, BROWNING and TRASK, Circuit Judges.

HAMLEY, Circuit Judge:

This is an interlocutory appeal, taken pursuant to 28 U.S.C. § 1292(b), from a district court order striking certain affirmative defenses and a counterclaim asserted by one of the defendants.

The plaintiff and appellee is Massillon-Cleveland-Akron Sign Co. (MCA), which is the owner of Letters Patent No. 2,764,830 for "Articulated Banner Unit Construction." The defendants are Golden State Advertising Co., Inc. (Golden State), Albert A. Gold, sole stockholder and President of Golden State, William Monaghan, an employee of Golden State, and McCoy-Gold Merchandising, Inc. (McCoy-Gold), in which Gold owned a fifty percent interest. McCoy-Gold acts as a sales representative for Golden State.

MCA acquired its patent from the original patentee, Edward Frey. In 1962, MCA charged Golden State, Gold, and others not involved in this litigation, with infringement of the patent. MCA informed Golden State and Gold that legal action would be taken if they did not cease infringement activities and if they did not account for sales of the infringing items.

This threatened legal action was forestalled when the concerned parties, on July 23, 1962, entered into a written agreement settling the controversy. Under the terms of the agreement, Golden State and Gold acknowledged the validity of the patent and covenanted to refrain from directly or indirectly contesting or questioning the validity of the patent. Golden State and Gold also therein admitted having infringed the patent and covenanted that they would not infringe the patent in the future. As called for in the agreement, Golden State and Gold paid MCA five hundred dollars as liquidated damages.

In 1964, MCA again charged Golden State and Gold with infringing the patent and further asserted they breached the 1962 settlement agreement. After representations were made to it, MCA concluded that the 1964 infringement was not deliberate and involved sales of only a few units. When Golden State and Gold informally expressed an intent to avoid further infringement, MCA

elected not to pursue the matter further at that time.

In 1968, MCA received information leading it to believe that Golden State and Gold again were infringing the patent and had breached the settlement agreement. MCA therefore brought this action against them and others. In its amended complaint, MCA alleged that Golden State and Gold had breached the settlement agreement by infringing the patent. Plaintiff also named, as defendants, McCoy-Gold and Monaghan. MCA alleged that Gold, McCoy-Gold and Monaghan conspired to and did induce Golden State to breach the settlement agreement. Finally, MCA alleged that McCoy-Gold and Monaghan induced Gold to breach the agreement. MCA sought an accounting and asked for punitive damages.

McCoy-Gold's answer, in part, raised the issues of misuse of the patent and the patent's invalidity by way of affirmative defenses and counterclaim. Upon motion of MCA, the district court, on May 23, 1969, struck these portions of the affirmative defenses and dismissed the counterclaim. It did so on the ground that this is not an action for infringement of a patent, raising issues as to the validity or misuse of the patent, but is an action for breach of the settlement agreement.[1]

Thereafter, on March 6, 1970, all of defendants moved the district court to reconsider and vacate its order of May 23, 1969. They did so on the ground that, under the reasoning of the intervening decision, on June 15, 1969, in Lear, Inc. v. Adkins, 395 U.S. 653, 89 S. Ct. 1902, 23 L.Ed.2d 610 defendants were entitled to show a failure of consideration for the settlement agreement because the patent is invalid. MCA op-

posed the motion. On April 29, 1970, the district court entered an order denying the motion to vacate the order of May 23, 1969. The district court held that *Lear* is distinguishable and does not entitle defendants to question the validity of the patent in this action on the settlement agreement. All defendants then joined in this interlocutory appeal,[2] except Monaghan.

Golden State and Gold are charged with breach of a covenant not to infringe MCA's patent, and in our view the single question presented on appeal, with respect to this allegation, is whether, in light of *Lear,* the express covenant, in which Gold and Golden State agreed to refrain from directly or indirectly contesting the validity of MCA's patent, is illegal and unenforceable.

*Lear* did not specifically deal with the validity of such a covenant. Instead *Lear* concerned itself primarily with a re-examination of the rule, stated in Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., 339 U.S. 827, 836, 70 S.Ct. 894, 94 L.Ed. 1312 (1950), that the licensee under a patent license agreement is estopped to challenge the validity of the licensed patent in a suit for royalties due under the contract. The court called attention to stringent limitations which past decisions had placed upon the doctrine of licensee estoppel, noting that this had left the doctrine in an uncertain state. This uncertainty, the court observed, was a product of judicial efforts "to accommodate the competing demands of the common law of contracts and the federal law of patents." 395 U. S. at 668, 89 S.Ct. at 1910. The Court observed:

"On the one hand, the law of contracts forbids a purchaser to repudiate his

---

1. An appeal from this order was docketed in this court on June 25, 1969, as No. 24,469. This court later dismissed that appeal upon the motion of MCA.

2. Thus while the order under review specifically dealt only with the answer filed by McCoy-Gold, all defendants feel

aggrieved thereby. While the answering pleadings of the other defendants are not in the record before us, it is recited in the agreed statement that all defendants seek to attack the validity of the patent. We will accordingly assume, as have the parties, that the order under review is adverse to all defendants.

promises simply because he later becomes dissatisfied with the bargain he has made. On the other hand, federal law requires that all ideas in general circulation be dedicated to the common good unless they are protected by a valid patent." 395 U.S. at 668, 89 S.Ct. at 1910 (footnote omitted).

In *Lear*, the Supreme Court concluded that there was no satisfactory intermediate position between these competing demands, and resolved the conflict in favor of the policy behind the federal law. The Court, characterizing Automatic Radio Mfg. Co. v. Hazeltine Research, Inc., *supra*, as "the product of a clouded history," expressly overruled that decision. The Court held that Lear, Inc. must at least be permitted to avoid the payment of all royalties accruing after Adkins obtained his patent, despite an express contractual provision obligating Lear, Inc. to pay royalties until the patent is held invalid, if Lear, Inc. can prove patent invalidity. The Court said:

> "The parties' contract, however, is no more controlling on this issue than is the State's doctrine of estoppel, which is also rooted in contract principles. The decisive question is whether overriding federal policies would be significantly frustrated if licensees could be required to continue to pay royalties during the time they are challenging patent validity in the courts.

> \* \* \* \* \* \*

> " \* \* \* enforcing this contractual provision would undermine the strong federal policy favoring the full and free use of ideas in the public domain." 395 U.S. at 673–674, 89 S.Ct. at 1912–1913.

We think the rationale of *Lear* requires us to hold that the covenant of Golden State and Gold, in the settlement agreement of July 23, 1962, not to contest the validity of MCA's patent, is void on its face and unenforceable. It is in just as direct conflict with the "strong federal policy" referred to repeatedly in *Lear*, as was the estoppel

doctrine and the specific contractual provision struck down in that decision.

In an earlier Supreme Court case, Edward Katzinger Co. v. Chicago Metallic Mfg. Co., 329 U.S. 394, 67 S.Ct. 416, 91 L.Ed. 374 (1947), the Court dealt specifically with the enforceability of a covenant not to challenge the validity of a patent. The Court held that such a provision "can no more override congressional policy than can an implied estoppel." 329 U.S. at 402, 67 S.Ct. at 421. In our case, as in *Katzinger*, the covenant not to contest validity of the patent cannot over-ride federal policy.

We think it unimportant that in our case the covenant is part of a settlement agreement rather than of a typical patent licensing agreement. Were we to recognize such a distinction it would, in practice, be less then workable. The licensing arrangement in *Katzinger*, at 395, 67 S.Ct. 416, arose from a charge of infringement. Similarly, it would be just as easy to couch licensing arrangements in the form of settlement agreements. If the recognized policy favoring settlement of disputes might be hindered by our holding on this question, that policy, in our opinion, must give way to the policy favoring free competition in ideas not meriting patent protection.

■ The second issue presented on this appeal concerns the right of Gold and McCoy-Gold to assert patent invalidity as a defense to the charge of having induced the breach of a contract not to infringe.

For the most part the parties, in their argument here, have not distinguished the position of defendants charged with inducing the breach from that of the defendants charged with the breach. As we view the matter their positions are not necessarily the same.

Generally, the focus of the arguments in the district court and here has been on the express covenant by Gold and Golden State not to question the validity of the patent. But under the facts here McCoy-Gold is not bound by the terms

of the agreement. While Gold is not precluded from raising the validity of the patent merely because he covenanted not to do so, this does not foreclose the question of whether he may challenge the patent's validity as a defense to the inducement to breach charge.

If either McCoy-Gold or Gold is to be precluded from challenging the patent's validity, with respect to the inducement to breach charge, it stems from MCA's argument that local law precludes a party, who allegedly induced the breach of a covenant not to infringe, from raising such matters.

Were this an action for infringement and for inducing infringement, without the additional element of the contract, a party who induced others to infringe would be liable as an infringer. 35 U. S.C. § 271(b). In an action involving infringement, invalidity is an available defense. 35 U.S.C. § 282. Therefore, the question is whether the additional element of the contract serves to preclude the issue of invalidity of the patent.

The law gives the patent holder the benefit of a presumption of the patent's validity, and the holder of a patent need not exact from others a promise not to infringe, for the law gives the holder a remedy for conduct that infringes. But the remedy, designed to afford no more protection than public policy allows, depends in part upon the validity of the patent.

If a patent holder can exact from another a promise not to infringe, and thereby recover from one inducing the breach of that promise, in the absence of a valid patent, the patent holder is afforded more protection than the patent laws allow. The patent holder acquires this additional protection "merely because he [MCA here] chose one remedy [inducement to breach a contract not to infringe] rather than another [inducement to infringe] on the same substan-

tive issue." *Katzinger,* at 399–400, 67 S.Ct. at 419. Federal policy favoring free competition in ideas not meriting patent protection cannot be so easily subverted.

In addition, the equities of the patent holder do not weigh heavily when balanced against the "important public interest in permitting full and free competition in the use of ideas which are in reality in the public domain." *Lear,* 395 U.S. at 670, 89 S.Ct. at 1911. Like the licensee, the one inducing the breach may be the only party with the economic incentive to challenge the validity of the patent.

Without the inducement, the contract and the patent probably would have been honored. Thus the act of inducing the breach, perhaps even more so than the act of breaching the contract, exemplifies a willingness to shoulder the burden of vindicating the public interest. To hold a party liable for damages for inducing the breach, in the absence of a valid patent, is as inimical to the public interest as the now defunct principle of licensee estoppel.

Needless to say, one inducing the breach of such a contract, as well as one inducing the infringement of a patent, runs the risk that he may not be able to establish patent invalidity. Nothing said herein is intended to commend one who induces the infringement of a valid patent, or who induces the breach of a contract not to infringe a valid patent. But we are of the opinion that a valid patent is a prerequisite to recovery for inducing the breach of a contract not to infringe, as well as a prerequisite to recovery for the breach itself.

A third question lurks in this appeal, namely defendants' contention that the district court erred in striking from McCoy-Gold's answer its defense that MCA has misused the patent by exacting a promise from Gold and Golden State not to contest the patent's validity.[3]

---

3. Since we do not have the answers filed by the other defendants, and the matter is not dealt with in the agreed statement of facts, we do not know whether any defendant other than McCoy-Gold asserted this defense.

We say the question "lurks" in the appeal because, while defendants refer to the matter of misuse they do not deal with the specific question of whether one alleged to have induced a breach of a settlement agreement may assert such a defense. Nor has MCA discussed the point in its brief on appeal. For this reason, and because such a defense presumably would be reached only in the event MCA prevails on both patent validity and patent infringement, we decline to render a definitive decision on this interlocutory appeal as to whether such a defense is available to any of the defendants.

Reserving that question, however, we think defendants should be permitted to plead that defense, if they wish, so that the relevant facts may be developed in the event the issue of patent misuse is reached in the further district court proceedings. This will enable the parties to present the question on a second appeal, if this becomes necessary, in a concrete factual setting, and to present an adequate legal discussion of the matter.

Reversed and remanded for further proceedings consistent with this opinion.